LOWELL BYRD *v.* CHRISTINE BYRD

5-5828                                      478 S.W. 2d 45

Opinion delivered March 27, 1972

*Fred A. Newth, Jr.,* for appellant.

*Hall, Tucker & Lovell,* for appellee.

GEORGE ROSE SMITH, Justice. In 1966 the appellant, Lowell Byrd, obtained a divorce from the appellee and was directed to pay alimony in the amount of $150 a month. *Byrd* v. *Byrd,* 241 Ark. 374, 407 S.W. 2d 731 (1966). In 1971 Byrd filed the present petition, asking that he be relieved from any further obligation to pay alimony, on the ground that Mrs. Byrd was assertedly living with another man as husband and wife. This appeal is from the chancellor's refusal to modify the prior award.

Byrd relies for relief upon our cases holding that upon a divorced wife's remarriage her former husband is entitled to apply to the court for an order terminating the alimony payments. The reason for the rule was stated in *Wear* v. *Boydstone,* 230 Ark. 580, 324 S.W. 2d 337 (1959): "We have no quarrel with the statement that alimony payments should cease upon the divorced wife's remarriage, for we see no logic in requiring a first husband to contribute at regular intervals to an ex-wife whose care and maintenance has been assumed by a second husband."

It is apparent that the reason for the rule which we have adopted in cases of remarriage does not apply in this instance, for there is no indication that Mrs. Byrd's supposed paramour has assumed any responsibility for her care and maintenance. Nor is it shown by the weight of the proof in the case at bar that Mrs. Byrd has assumed the other man's name and held herself out publicly as his wife. In that extreme situation at least two courts have approved a termination of the former husband's obligation to pay alimony. *Grant v. Grant,* 52 Cal. App. 2d 359, 126 P. 2d 130 (1942); *Coggins v. Coggins,* 289 Ky. 570, 159 S.W. 2d 4 (1942). In New York the same result has been reached by statute. *Waddey v. Waddey,* 290 N.Y. 251, 49 N. E. 2d 8 (1943).

In the court below the evidence was in sharp conflict. Even if we should accept Byrd's contention that he and his supporting witnesses established instances of immorality on the part of Mrs. Byrd, we are not prepared to say that a former husband is entitled to sit in judgment of his divorced wife's conduct, any more than she is entitled to take such a position with respect to his conduct. Upon the former appeal we increased the chancellor's award of alimony because Mrs. Byrd was shown to be a hopeless cripple who was incapable of supporting herself. There is no showing that her condition has changed. To the contrary, Mrs. Byrd's sister testified that she had given money to Mrs. Byrd for years: "I gave it to her because she had to have it. She had no money to live [on] and nothing to eat and nothing [with which] to buy any clothes." Upon the proof as a whole we cannot say that the chancellor's decision to deny Byrd's application for relief is against the preponderance of the evidence.

Affirmed.

Byrd, J., not participating.