Gloria Goolsby HERMAN *v.*
Michael Thomas HERMAN

98-85                                               977 S.W.2d 209

Supreme Court of Arkansas
Opinion delivered November 5, 1998

*Robert S. Laney*, for appellant.

*Bramblett & Pratt*, by: *Eugene D. Bramblett*, for appellee.

D AVID NEWBERN, Justice. Appellant Gloria Goolsby Herman and appellee Michael Thomas Herman were divorced on June 30, 1992. The decree directed Mr. Herman to pay alimony in the amount of $25 per week until June 1994 and $50 per week thereafter. In March 1997, Mr. Herman petitioned to terminate his alimony obligation on the ground that Ms. Herman and Richard Purifoy, although unmarried, had been living together for several years. Mr. Herman alleged that Mr. Purifoy was "gainfully employed" and contributing towards Ms. Herman's "support and maintenance" and that their cohabitation was a "material change in circumstances" that warranted the termination of his alimony obligation. Ms. Herman appeals the Chancellor's order granting Mr. Herman's petition. We reverse and remand.

Mr. Herman's alimony obligation was determined in June 1992 on the basis of several factors, including (1) the fact that Ms. Herman, as a result of the divorce, would lose coverage under Mr. Herman's insurance policies and would need financial assistance to procure coverage for herself; and (2) the fact that Ms. Herman's father would be living with Ms. Herman and contributing $200 per month toward household expenses. No issue has been raised in this case with respect to whether an agreement between the parties is merged in the decree.

Since the divorce, Ms. Herman has used the alimony payments to purchase life and health insurance policies. The $200 monthly payments that Ms. Herman received from her father ceased upon his death in March 1994. Mr. Purifoy moved into Ms. Herman's home in July 1994 and has remained there except for the period from September to December of 1995.

Mr. Purifoy testified that he and Ms. Herman live together in a "permanent" sexual relationship that is "everything but marital in name." He testified that he and Ms. Herman have discussed marriage and "plan to" marry. Mr. Purifoy is employed and contributes $200 per month toward his share of the utility bills, which is the same amount that Ms. Herman's father had contributed. Mr. Purifoy added that he "sometimes pick[s] up the tab" when he and Ms. Herman "go out for dinner" and that he "occasionally pay[s] for the groceries." Ms. Herman testified that she purchases groceries "most of the time." She added that Mr. Purifoy pays "his fair share" of the utility bills and is neither "freeloading" nor "the kind of fellow who would mooch off of someone."

Mr. Herman testified that he has remarried, but he did not assert, or introduce evidence showing, that his ability to pay alimony has diminished since the time of the divorce. Mr. Herman conceded that Ms. Herman's financial condition has not changed since the divorce "if what [Mr. Purifoy] is contributing is basically the same thing that [Ms. Herman's father] was contributing."

The Chancellor granted Mr. Herman's petition. The Chancellor found that Ms. Herman had been "cohabitating" with Mr. Purifoy and that Mr. Purifoy "regularly contributes to the

monthly household expenses." The Chancellor's letter opinion continued with a statement of public policy, although it was not so designated, to the effect that allowing alimony to continue in the circumstances presented would amount to a "deterrent" to marriage, which is an institution to be encouraged by the court. The Chancellor concluded that Ms. Herman's situation is no different than if she and Mr. Purifoy were married.

■ Public policy is found in the Constitution of Arkansas and in the laws enacted by the General Assembly. *Vincent v. Prudential Ins. Brokerage*, 333 Ark. 414, 417-18, 970 S.W.2d 215, 217 (1998); *Western World Ins. Co. v. Branch*, 332 Ark. 427, 431, 965 S.W.2d 760, 762 (1998). A statute addresses instances in which there shall be an automatic cessation of alimony, unless "otherwise ordered by the court or agreed to by the parties, . . . upon the earlier of":

> (A) The date of the remarriage of the person who was awarded the alimony; or
>
> (B) The establishment of a relationship that produces a child or children and results in a court order directing another person to pay support to the recipient of alimony, which circumstances shall be considered the equivalent of remarriage; or
>
> (C) The establishment of a relationship that produces a child or children and results in a court order directing the recipient of alimony to provide support of another person who is not a descendant by birth or adoption of the payer of the alimony, which circumstances shall be considered the equivalent of remarriage.

Ark. Code Ann. § 9-12-312(a)(1)(A)-(C) (Repl. 1998). *See Smith v. Smith*, 41 Ark. App. 29, 848 S.W.2d 428 (1993). While we have no quarrel with the Chancellor's statement about the encouragement of marriage, the General Assembly has addressed the establishment of a relationship resulting in the birth of a child but has not seen fit to say that mere cohabitation is the "equivalent of marriage" as the Chancellor suggested.

■ ■ The Chancellor's reasoning also conflicts with our holding in *Byrd v. Byrd*, 252 Ark. 202, 478 S.W.2d 45 (1972), which clearly indicates that marriage and nonmarital cohabitation

are *not* equivalent for purposes of determining whether a former spouse is entitled to continue receiving alimony. Without deciding the issue, we suggested that a spouse who cohabitates with a third party might lose his or her entitlement to alimony if (1) the third-party "companion" has assumed responsibility for the spouse's "care and maintenance"; or (2) the spouse has assumed his or her companion's name and held himself or herself out publicly as the companion's spouse. 252 Ark. at 203, 478 S.W.2d at 46.

■ Even under the analysis suggested in the *Byrd* case, Ms. Herman's cohabitation with Mr. Purifoy cannot be viewed as the equivalent to marriage for purposes of determining whether Ms. Herman is entitled to continue receiving alimony payments from Mr. Herman. There is no evidence that Ms. Herman has assumed Mr. Purifoy's name or held herself out publicly as his wife. Likewise, there is no evidence that Mr. Purifoy has assumed responsibility for Ms. Herman's "care and maintenance."

■ "An award of alimony is always subject to modification, upon application of either party," pursuant to Ark. Code Ann. § 9-12-314(a) (Repl. 1998). *Bracken v. Bracken*, 302 Ark. 103, 105, 787 S.W.2d 678, 679 (1990).

> Such modification must be based, however, on a change in the circumstances of the parties. The burden of showing such a change in circumstances is always upon the party seeking the change in the amount of alimony. The primary factors to be considered in making or changing an award of alimony are the need of one spouse and the ability of the other spouse to pay. *Id.* (citations omitted).

■ We find no such evidence in the record. As Mr. Herman conceded in his testimony, Ms. Herman's financial condition is the same as it was at the time of the divorce. Mr. Purifoy contributes $200 toward his share of the household utility expenses, but that is the same amount that Ms. Herman's father had contributed and that the Hermans had originally taken into account in determining Mr. Herman's alimony obligation. There is no evidence Mr. Purifoy has otherwise contributed significantly towards Ms. Herman's care and maintenance. Ms. Herman's

cohabitation with Mr. Purifoy, then, has not changed Ms. Herman's financial circumstances or diminished her need for alimony.

■ "An award of alimony lies within the discretion of the chancellor and will not be reversed absent an abuse of that discretion." *Burns v. Burns*, 312 Ark. 61, 67, 847 S.W.2d 23, 27 (1993). A finding of changed circumstances warranting the termination of an alimony obligation, however, is a finding of fact that will not be reversed unless clearly erroneous or clearly against the preponderance of the evidence. *Benn v. Benn*, 57 Ark. App. 190, 194, 944 S.W.2d 555, 558 (1997).

■ The Chancellor clearly erred when he terminated Mr. Herman's alimony obligation absent a showing of changed circumstances. The order terminating Mr. Herman's alimony obligation is therefore reversed, and the case is remanded for entry of an order consistent with this opinion.

Reversed and remanded.