Leon ABBOTT *v.* Ann ABBOTT

CA 02-196                                    90 S.W.3d 10

Court of Appeals of Arkansas
Division III
Opinion delivered November 13, 2002

*Paul D. Reynolds*, for appellant.

*Lisa Lundeen-Gaddy*, for appellee.

JOSEPHINE LINKER HART, Judge. This is an appeal from an order awarding judgment for $17,511 to appellee Ann Abbott ten months after she and appellant Leon Abbott were divorced. Appellant argues that this judgment was an impermissi-

ble modification of the divorce decree. Appellee contends that it was merely an interpretation and enforcement of that decree. We agree with appellee.

The parties were married in June 1975 and separated in September 1997. Their son was born in 1983. Appellee was awarded a divorce from appellant on October 11, 2000, in the Benton County Chancery Court. In the divorce decree, the judge stated that the parties had agreed to the division of the marital property; that appellee was to receive the 1996 Plymouth Breeze; and that appellant would be responsible for the outstanding debt on the car. The decree provided: "[Appellant] shall pay to [appellee], or provide proof of payment to [appellee], the full amount of the outstanding indebtedness against her 1996 Plymouth Breeze through APG [Aberdeen Proving Ground] in Aberdeen, Maryland, and [appellant] shall sign the bill of sale attached hereto, relinquishing all claim to said vehicle. . . ." With regard to child support, the decree stated: "[Appellee] hereby accepts full payment of the balance of indebtedness on her Plymouth Breeze by [appellant] as full satisfaction of all child support, past and future, for the support of said minor child." The decree also stated that appellee would receive "[o]ne-half of [appellant's] retirement accumulated from the date of marriage on June 28, 1975 through the date of separation on September 16, 1997." The decree set forth appellant's obligation with regard to the division of his "retirement" as follows: "[Appellant] shall provide proof of the existence of his retirement and the current status of that retirement, along with the name of the plan so that a qualified domestic relations order [QDRO] can be provided to the plan holder for the disbursement to [appellee] for her portion of the funds." The decree concluded with the following provision: "That this Court shall retain jurisdiction of this cause for such further orders as may be necessary and proper concerning the enforcement of this decree."

Appellant signed the bill of sale attached to the divorce decree, giving all of his "rights, title and interest" in the Plymouth

to appellee. He did not, however, pay off the entire debt on the car but simply continued to make the monthly payments.

With regard to his "retirement," appellant provided appellee's attorney with a copy of the pension agreement between his employer, Bethlehem Steel Corporation, and the United Steelworkers of America. He did not, however, provide appellee with any information as to his vested amount in the pension plan, nor did he inform appellee that he also had a 401(k) plan and a stock ownership plan with Bethlehem Steel that was managed by Fidelity Institutional Retirement Services Company in Boston, Massachusetts. Bethlehem Steel forwarded to Fidelity a QDRO sent by appellee's attorney, and Bethlehem Steel mailed a letter to appellee's attorney on January 12, 2001, stating that it had done so.

On January 31, 2001, appellant's attorney sent the following letter to Fidelity:

> Please be advised that a letter dated January 12, 2001, was sent to counsel in this matter from Bethlehem Steel Corporation reflecting that correspondence from attorney Lisa Gaddy [appellee's attorney] dated November 8 and November 16, 2000, in a proposed domestic relations order concerning Leon W. Abbott, Jr., (Social Security NO. 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) was sent to you for action concerning the 401K Plan of Leon W. Abbott, Jr. We are somewhat concerned about this matter, in that apparently nobody checked the QDRO which does not have any application to Mr. Abbott's 401K Plan being handled by Fidelity. We want to head this matter off before any deductions are made or any tax liabilities arise for Mr. Abbott.
>
> The sole application of the QDRO was to Mr. Abbott's Bethlehem Steel Corporation Retirement. It had nothing to do with his 401K Plan. If there is any action that is being taken or anticipated with respect to the 401K, please review the QDRO and contact our office if necessary. I would ask that no action be taken on the 401K Plan until we receive some correspondence back from you.

On February 23, 2001, Fidelity sent a notice to appellee's attorney that the file could not be completed because appellee's

date of birth had not been provided. That same day, Fidelity also sent a letter to both parties' attorneys acknowledging receipt of two QDROs dated November 7, 2000, and November 16, 2000, from appellee's attorney. Fidelity stated that it would review the November 16, 2000, order to determine if it was qualified pursuant to the Employee Retirement Income Security Act of 1974 and the Internal Revenue Code. Fidelity stated that a disbursement restriction had been placed on the account while the matter was in legal review and added:

> Please note that we are also in receipt of a letter from Attorney Pawlik [appellant's attorney] dated January 31, 2001 in which he states the Domestic Relations Order was intended to be on the *Bethlehem Pension Plan, not the defined contribution Plan.* Again, we request that we be notified immediately if the parties do not wish to have the November 16, 2000 order reviewed for the 401(k) Retirement Savings Plan for Certain Represented Employees of Bethlehem Steel Corporation and Subsidiary Companies.

> If we do not hear otherwise, we will review the Order dated November 16, 2000 and advise you in writing in approximately sixty business days regarding the status of said Order.

On April 17, 2001, appellee filed a motion for contempt against appellant, stating that he had failed to provide her with the amount in his retirement plan or tell her what types of retirement plans were available to him as an employee of Bethlehem Steel. She stated that her attorney had learned that appellant had access to a savings plan, a 401(K) retirement savings plan, and a stock ownership plan at Bethlehem Steel. She also said that appellant had failed to provide her with proof that he had paid the full amount of the outstanding debt on the Plymouth. Appellee requested that appellant be jailed until he complied with the previous orders of the court. In his answer, appellant stated that he had provided appellee with a copy of the Bethlehem Steel retirement plan and that he was not required to provide her with information about any other plan. He also said that he had been making monthly payments on the Plymouth.

A hearing was held on the motion for contempt on July 31, 2001, and both parties appeared with their attorneys. Appellee's attorney stated that Fidelity had rejected the QDROs because she could not identify a specific retirement plan. Appellee testified that it was her understanding that the divorce decree had required appellant to provide her with proof of *all* of his retirement benefits but that, with the exception of the Bethlehem Steel retirement plan booklet, he had failed to do so. She stated that she had received no information as to the amount of money in any retirement plan. She also said that she understood that the divorce decree had required appellant to satisfy the debt on the Plymouth and that, although he had given her the bill of sale, he had failed to provide her with proof that the debt had been paid.

At the conclusion of appellee's testimony, the judge stated to appellant's attorney:

> Look I just want to tell you this, if you and your client don't provide all of the information that she needs to make application for, and receive these benefits, then he's going to stay in the jail until — whatever. Now, you do it. And I'm gonna go out to my office right now and you all ·do this before I come back. Now don't give me a bunch of run around or shake your head. You all know what the spirit of the Order was, now offer it up.

At the conclusion of the recess, appellant testified that he had produced the necessary information. He admitted that he had a 401(k) retirement savings plan that had contained $34,263.23 on September 30, 1997; that he had a stock ownership plan with Bethlehem Steel that was valued at $362.10 as of July 1997; and that his vested amount in the Bethlehem Steel pension plan was $397 in September 1997. Appellant explained that, at the time of the divorce, he had understood that only the Bethlehem Steel pension plan was included within the term "retirement" in the decree. Appellant also admitted that Aberdeen Proving Ground still held a lien on the Plymouth. He explained that he was making periodic payments on the Plymouth in lieu of child support and that he did not believe that the divorce decree required him to immediately pay the outstanding balance.

At the conclusion of the hearing, the judge did not find appellant to be in contempt. He stated that he interpreted the decree's provision regarding appellant's "retirement" as including the 401(k) plan, the stock-sharing plan, and the pension plan. Adding the amounts in those plans, he found that appellee was entitled to $17,511 and stated:

> And the best I could tell, because I think that all of those items were — it was the intent of the Decree to include those items in the Decree — and to be divided. It doesn't make any sense for it to be otherwise.
>
> And I . . . don't understand how you can think, sir, that . . . you can give her a Bill of Sale without having paid for the car, and still leave a lien that attaches to the vehicle over there in Maryland. . . .
>
> Anyhow, [appellee] will have judgment for Seventeen Thousand Five Hundred Eleven Dollars ($17,511) at ten (10) percent. And . . . I'll give you . . . sixty (60) or ninety (90) days to clean up the car problem.

Appellant's attorney then raised the following questions regarding the QDRO:

> MR. PAWLIK: Well, Your Honor, as the Court is probably aware of with regard to the anything that is a 401(k), policy for the withdrawal of funds from that policy, require at least a ten (10) percent penalty.
>
> THE COURT: Not with a QDRO.
>
> MR. PAWLIK: I'm sorry.
>
> THE COURT: Not when you have a QDRO.
>
> MR. PAWLIK: I mean, as long as they're — I mean, my only concern is that there will be a ten (10) percent penalty, or assume the tax liability.
>
> THE COURT: No, not under a QDRO. That's why the QDRO is there. It's one of those IRS deals. That's why the Court gets involved.

On August 29, 2001, the judge entered an order granting appellee a judgment in the amount of $17,511 and giving appel-

lant sixty to ninety days to "clean up the title" to the Plymouth. It is from this order that appellant has appealed.

## Arguments

Appellant makes the following arguments on appeal: (1) the judge improperly modified the divorce decree more than ninety days after its entry in violation of Arkansas Rule of Civil Procedure 60; (2) the trial court lost jurisdiction to modify the decree because the omission of appellant's 401(k) and employee stock ownership plans was not a clerical error; (3) the entry of judgment for $17,511 against appellant violates the Internal Revenue Code; (4) the judge lacked the authority to modify the parties' agreement regarding the disposition of their property; (5) the judge erred in ordering appellant to provide clear title to the Plymouth; (6) the August 29, 2001, order directing appellant to clean up the title to the Plymouth within sixty to ninety days is too vague and ambiguous to be enforced. Our disposition of appellant's first point makes it unnecessary to address his second, third, and fourth points.

## Standard of Review

■ Decisions rendered by courts of equity are reviewed *de novo* on appeal, and are not reversed unless we find that the trial judge's decision is clearly erroneous. *Narup v. Narup*, 75 Ark. App. 217, 57 S.W.3d 224 (2001).

## The Trial Court's Jurisdiction

Appellant argues that the judge modified the divorce decree by awarding judgment for $17,511 to appellee and that the trial court had lost jurisdiction to do so. It is true that, according to Ark. R. Civ. P. 60, with the exception of clerical errors and certain exceptions not applicable here, the trial court did not have jurisdiction to modify the decree.[1] However, it is apparent to us

---

[1] Rule 60 provides that a court may modify a judgment after ninety days when the court seeks to correct a clerical error, or if the party demonstrates that the circumstances

that the judge's decision was not a modification of the decree but was, instead, an interpretation, clarification, and enforcement of the divorce decree.

■ ■ · After ninety days, without the showing of one of the exceptions listed in Rule 60, a court has no power to modify or set aside an order. *Sims v. First State Bank of Plainview*, 73 Ark. App. 325, 43 S.W.3d 175 (2001). A trial court, however, has inherent power to enter an order for the purpose of correcting a judgment to ensure that the judgment is truthful and that it accurately reflects the court's original ruling. *Narup v. Narup, supra.* The power is not absolute, and the court is limited to correcting the order to reflect the action the court actually took as demonstrated by the record rather than the action the court should have taken. *Id.* This being so, a trial court has the power to correct a decree to accurately reflect its original ruling or to interpret its prior decision. *Id.* When the divorce decree is ambiguous, the trial court has jurisdiction to make changes that clarify what the court originally intended. *Holt v. Holt*, 70 Ark. App. 43, 14 S.W.3d 887 (2000).

■ ■ As a general rule, judgments are construed like any other instrument; the determinative factor is the intention of the court, as gathered from the judgment itself and the record. *Fox v. Fox*, 68 Ark. App. 281, 7 S.W.3d 339 (1999). Here, the divorce decree's reference to "retirement" was shown to be latently ambiguous.[2] Appellant's employer actually had three types of plans, and appellee testified that she had believed the decree awarded her a one-half interest in all of them. The judge agreed, and we find that his construction of the decree is not clearly erro-

---

warranting a modification fall within seven enumerated grounds. These grounds include: (1) granting a new trial because evidence was discovered after ninety days; (2) granting a new trial in proceedings against a defendant who was constructively summoned and failed to appear; (3) misprisions of the clerk; (4) misrepresentation or fraud; (5) erroneous proceedings against a minor or person deemed incompetent; (6) the death of one of the parties; (7) errors in a judgment shown by an infant within twelve months after reaching eighteen years. *Slusher v. Slusher*, 73 Ark. App. 303, 43 S.W.3d 189 (2001).

[2] A latent ambiguity arises when collateral facts exist that make a term's meaning uncertain. *Oliver v. Oliver*, 70 Ark. App. 403, 19 S.W.3d 630 (2000).

neous. Thus, his award of $17,511 to appellee was well within the court's jurisdiction to interpret, clarify, and enforce the original divorce decree.

■ However, it is also evident, from the judge's statements quoted above, that he construed the decree as requiring the judgment to appellee to be satisfied through the entry of a QDRO. When appellant's attorney voiced his concerns about the tax liability for the distribution, the judge replied that appellant would not bear the tax liability because a QDRO would be entered. However, the judgment to appellee for $17,511 does not provide that a QDRO be entered, and this must be corrected. Therefore, we affirm the award of judgment to appellee and remand with directions to the judge to require that a QDRO be executed awarding appellee that amount.

*The Plymouth*

■ Appellant also contends that the trial judge misinterpreted the divorce decree as requiring him to immediately pay the full amount of the debt on the Plymouth. We disagree. Although the decree does not state a specific time for the satisfaction of the debt, its requirement that appellant sign a bill of sale, and appellee's testimony that she believed she was entitled to immediate satisfaction of the debt, convince us that the judge's construction of the decree is not clearly erroneous.

■ Appellant also argues that the order directing appellant to clean up the title to the Plymouth within sixty to ninety days is too vague to be enforced. Because appellant has cited no authority for this argument, and because the trial judge clearly expressed the inconsistency of a bill of sale with an outstanding lien, we need not address it. *See Stilley v. James*, 347 Ark. 74, 60 S.W.3d 410 (2001).

Affirmed as modified and remanded.

STROUD, C.J., and ROAF, J., agree.