Gordon L. GIBSON *v.* Connie GIBSON

CA 03-757 185 S.W.3d 122

Court of Appeals of Arkansas
Divisions I, II, and III
Opinion delivered June 16, 2004

---

64

*Dover, Dixon, Horne, PLLC,* by: *W. Michael Reif* and *Nona Morris,* for appellant.

*Patty Law Firm,* by: *Claibourne W. Patty, Jr.,* for appellee.

KAREN R. BAKER, Judge. Appellant, Gordon Gibson, appeals the trial court's denial of his petition to terminate alimony provided to appellee, Connie Gibson, pursuant to the parties' divorce decree. He raises three points on appeal: (1) The trial court erred in not finding the requests for admissions admitted due to appellee's failure to file a timely response; (2) The trial court erred in failing to find that Michael Black and appellee, Connie Gibson, were living in the same household; and (3) The trial court did not have jurisdiction to modify the definition of cohabitation in the order. We affirm as modified.

The parties were divorced in 1999. The decree ordered Dr. Gibson to pay alimony for November and December of 1998 in the amount of $9000 per month; $3000 per month for twelve

months beginning January 1, 1999; $2500 per month for twelve months beginning January 1, 2000; $2000 per month for five years beginning on January 1, 2001; and $1500 per month for four years beginning on January 1, 2006. The decree also included the following court-devised provision:

> The alimony will terminate upon either party's death or the remarriage or cohabitation by the Plaintiff [Connie]. Cohabitation means spending at least four nights per week from 12:00 p.m. until 6:00 a.m. in the same household with another party with whom the Plaintiff is not married or related.

On June 4, 1999, an order was filed based upon a joint motion from the parties to correct a clerical mistake concerning the alimony provision. The provision provided, in pertinent part:

> Cohabitation means spending at least four (4) nights per week from 12:00 *a.m. (midnight)* until 6:00 a.m. in the same household with another party *of the opposite sex* with whom the Plaintiff is not married or related.

(Emphasis added to note changes in decree language). Neither party appealed the original order or the initial changes to the original order.

On June 14, 2002, Dr. Gibson filed a motion to terminate alimony and for reimbursement of alimony, alleging that Ms. Gibson had been cohabitating with Michael Black since July 1999. In that motion, he asserted that because Ms. Gibson was living with Mr. Black, alimony should be terminated and that Ms. Gibson should be required to repay him $81,000 in alimony that he had paid since she had begun such cohabitation.

A return of service form filed in the record of this case states that a Keith C. Friedrich, an investigator, signed the return of service declaring that he had served a copy of the motion, along with a notice of hearing set, requests for admissions, and interrogatories "[b]y handing it to the person identified as Connie Gibson" at 7:13 a.m., on June 19, 2002, at 3850 Urban St., Wheatridge, Colorado. On that same date, these documents were faxed to the attorney who had represented Ms. Gibson in the divorce action.

Ms. Gibson filed an answer to Dr. Gibson's motion to terminate alimony on June 21, 2002; however, no answers were filed regarding the requests for admissions or the interrogatories. The requests for admissions consisted of two requests:

(1) Admit that you are cohabitating with Michael Black as that term is defined in the Divorce Decree entered on January 15, 1999, and Order which was entered on June 4, 1999;

(2) Admit you did not notify Defendant you were cohabitating with Michael Black.

On August 8, 2002, Dr. Gordon filed a motion to deem facts admitted and for summary judgment based upon those deemed admissions. Ms. Gibson filed an answer to that motion on August 10, 2002, and an answer to the requests for admission on August 21. She amended her answer to the motion to deem facts admitted and for summary judgment on September 30, 2002, one day prior to trial, denying that she had been served with any requests for admissions and asserting that a factual question existed as to whether she was romantically involved with her tenant. In his reply to her amended answer, Dr. Gordon contended that Ms. Gibson's failure to respond to the requests for admissions deemed them to be admitted, and he further contended that, because she was deemed to be cohabitating with Michael Black, there was no factual issue as to whether she was romantically involved with him.

At the hearing, the trial judge denied Dr. Gibson's motion to deem facts admitted. The court accepted Ms. Gibson's explanation that she was not served with the requests for admissions when she was served with the other documents filed in this case. The court noted that given the magnitude of what Ms. Gibson stood to lose, combined with her declaration that she had not received the requests, the court accepted her explanation and refused to deem the requests admitted. In addition, on its own motion, the court expanded the definition of "cohabitation" to provide:

> Cohabitation means spending at least four (4) nights per week from 12:00 a.m. (midnight) until 6:00 a.m. in the same household with another party of the opposite sex with whom the Plaintiff is not married or related *and with whom the Plaintiff has or has had an intimate or romantic relationship.*

(Emphasis added to indicate addition).

The judge also denied Dr. Gibson's motion for summary judgment. After hearing testimony on the motion to terminate alimony, the court denied that motion as well. Dr. Gibson appealed the denial of his motion, asserting three points of error.

■ We review equity cases such as this *de novo* on appeal; this court reviews the trial judge's findings of fact and affirms them unless they are clearly erroneous. *Cole v. Cole*, 82 Ark. App. 47, 110 S.W.3d 310 (2003). To demonstrate that the trial court's ruling was erroneous, an appellant must show that the trial court abused its discretion by making a decision that was arbitrary or groundless. *Id.*

Dr. Gibson first alleges that the trial court erred in not finding the requests for admissions admitted due to Ms. Gibson's failure to file a timely response. He relies upon Rule 36 of the Arkansas Rules of Civil Procedure, specifically the statement that "[t]he matter is admitted unless, within 30 days after service of the request, the party to whom the request is directed serves upon the party requesting the admission a written answer or objection."

■ Through the years, it has been the policy of our supreme court to require compliance with the rule governing responses to request for admissions by making it a practice of deeming the requests admitted when the responses are not on time. *See Womack v. Horton*, 283 Ark. 227, 674 S.W.2d 935 (1984). However, the particular facts of each case must be examined and, when the facts warrant, acceptance of late responses is required. *Id.*

In this case, Ms. Gibson asserted that she did not receive the requests for admissions with the other documents served upon her at her home in Colorado. In the cases cited and relied upon by Dr. Gibson, the only issue was whether the requests had been answered in the time and manner required by Rule 36. We find this case factually similar to *Beck v. Merritt*, 280 Ark. 331, 657 S.W.2d 549 (1983). In *Beck*, there was a factual dispute as to whether the requests for admission were ever received. The trial court accepted the non-receipt as factual, and, in accepting that explanation as the reason that answers to the requests had not been filed, set aside a judgment entered pursuant to the admissions.

■ Similarly, the trial judge in this case accepted Ms. Gibson's explanation that the requests were not timely answered because she did not receive them at the time the other papers were served upon her. The trial court found this explanation consistent with the fact that Ms. Gibson stood to lose a substantial amount of support in the pending litigation. Therefore, we cannot say that the trial judge's finding was arbitrary or groundless.

For his second point on appeal, Dr. Gibson alleges that the trial court erred in failing to find that Michael Black and Connie

Gibson were living in the same household. It is undisputed that Mr. Black and Ms. Gibson were living in the same house. Ms. Gibson testified that Mr. Black was a tenant who paid rent to her for living in her residence. Dr. Gibson characterized this arrangement as Mr. Black contributing financially to the household.

The issue in this case is whether the judge's finding that Connie Gibson and Michael Black were not living in the same household is clearly erroneous. Resolution of this question involves more than a determination of whether they were living in the same house, regardless of whether they were romantically involved. The trial judge referred to the definition of household contained in *Black's Law Dictionary* and stated "that household means a family living together" and also means "those who dwell under the same roof and compose a family." However, the trial judge further stated that she understood that in this context "to be in the same family, you do not have to be married and you do not have to be related." Thus, the trial judge recognized that factors in addition to residence in the same house were required before Mr. Black could be considered a member of Ms. Gibson's household.

■ " 'Household' is commonly and popularly understood as comprising an economic unit. A boarder may reside in one's house, but not in one's *household*." *Smith v. Southern Farm Bureau Casualty Ins. Co.*, 353 Ark. 188, 198, 114 S.W.3d 205, 210 (2003) (emphasis in original) (J. Corbin, concurring). The majority in *Smith* recognized that the term "family" has come to mean any group of persons who live, sleep, cook and eat upon the premises "as a single housekeeping unit." The court further found that if this definition were used in the context of the language of the insurance policy — "any member of your family residing in your household" — would be redundant as both "family" and "household" would have the same meaning. Therefore, the majority defined "family" in the context of the insurance policy language as meaning a blood or legal relationship.

■ The trial judge in this case specifically stated that the term "family" as used to define "household" did not mean relatives by blood or marriage. Interpreting the language of the divorce decree in the context of alimony requires an economic analysis more in keeping with defining family as a single housekeeping unit. *See Byrd v. Byrd*, 252 Ark. 202, 478 S.W.2d 45 (1972) (holding that in absence of showing that former wife's paramour had assumed any responsibility for her care and maintenance or

that she had assumed his name and held herself out publicly as his wife, alimony could not be terminated). Furthermore, the trial court had complete authority to interpet the divorce decree she had previously entered in this case. *See Abbott v. Abbott*, 79 Ark. App. 413, 90 S.W. 3d 10 (2002). As a general rule, judgments are construed like any other instrument; the determinative factor is the intention of the court, as gathered from the judgment itself and the record. *Id.* We give deference to the advantaged position and prerogatives of the trial judge as the finder of the facts; we allow the court considerable latitude of discretion as to the orders made; and we will not upset its judgment and substitute our own unless it clearly appears that the court abused its prerogatives. *Barker v. Barker*, 271 Ark. 956, 611 S.W.2d 787 (1981) (*citing Erickson v. Beardall*, 20 Utah 2d 287, 437 P.2d 210 (1968)).

In this case, the trial judge found that Mr. Black's relationship with Ms. Gibson was not one of sharing economic responsibility, and that he was neither a member of her "household" nor a member of her "family." There is certainly sufficient evidence to support the trial judge's findings, particularly when family is defined "as a single housekeeping unit" rather than as relatives by blood or marriage.

The trial judge cited several factors supporting the conclusion that the two did not reside in the same household, including:

> . . . the fact that the Plaintiff and Mr. Black did not go any places alone, that she has not slept in the same room with Mr. Black, that Mr. Black now lives in the basement of the home that Mrs. Gibson is living in, that he pays $1,000 per month rent, and assists in home and yard maintenance.

The judge also noted that the living arrangements of Mr. Black and Ms. Gibson were very close to the circumstances that existed at the time of the parties' divorce. Ms. Gibson testified that it was advantageous for her and her divorced daughter to have a male companion in the house because the situation with her daughter's former husband made them fearful for their physical safety. Ms. Gibson testified that she and Mr. Black have no joint bank accounts, credit cards, or other financial holdings, obligations, or ties but for the fact that he pays rent to Ms. Gibson.

■ Dr. Gibson testified that during the course of the marriage he socialized with Mike Black and that Mike Black had helped move the parties' daughter with Ms. Gibson because Dr.

Gibson's schedule was too busy. Further, Dr. Gibson testified that during the course of the marriage, it was not unusual for a third party to stay in the couple's home. Given this testimony, we cannot say that the trial judge's determination that Mr. Black was not a member of Ms. Gibson's household was clearly erroneous.

Nevertheless, Dr. Gibson complains that the trial court's order implies that Dr. Gibson had the burden to prove that Ms. Gibson was romantically involved with Mr. Black. We hold that whether or not Ms. Gibson and Mr. Black were romantically involved is not determinative of whether termination of alimony was appropriate.

In *Herman v. Herman*, 335 Ark. 36, 977 S .W.2d 209 (1998), our supreme court addressed a situation in which there was testimony that an ex-wife and her boyfriend lived in a permanent sexual relationship that is everything but marital in name. The supreme court reversed the trial court, holding that it was clearly erroneous in finding that the cohabitation of the ex-wife and another man amounted to changed circumstances that warranted the termination of the ex-husband's alimony obligation. The court explained:

> The [trial court]'s reasoning also conflicts with our holding in *Byrd v. Byrd*, 252 Ark. 202, 478 S.W.2d 45 (1972), which clearly indicates that marriage and nonmarital cohabitation are not equivalent for purposes of determining whether a former spouse is entitled to continue receiving alimony. Without deciding the issue, we suggested that a spouse who cohabitates with a third party might lose his or her entitlement to alimony if (1) the third-party "companion" has assumed responsibility for the spouse's "care and maintenance"; or (2) the spouse has assumed his or her companion's name and held himself or herself out publicly as the companion's spouse.

Id. at 39-40, 977 S.W.2d at 211. The court concluded that Ms. Herman's cohabitation with Mr. Purifoy, had not changed Ms. Herman's financial circumstances or diminished her need for alimony.

Therefore, the trial judge's decision in this case accurately reflects our supreme court's rulings identifying the conditions for the termination of alimony. *See also Cole v. Cole, supra* (explaining that the purpose of alimony is to rectify economic

imbalance in the earning power and the standard of living of the parties to a divorce in light of the particular facts of each case).

 In his third point on appeal, Dr. Gibson asserts that the trial court did not have jurisdiction to modify the definition of cohabitation in the order. We agree that the trial court was without jurisdiction to modify the divorce decree's definition of cohabitation. *See Abbott v. Abbott,* 79 Ark. App. 413, 90 S.W.3d 10 (2002); Ark. R. Civ. P. 60. However, as discussed above, whether or not Ms. Gibson had a romantic or intimate relationship with Mr. Black does not determine the issue of whether or not alimony should be terminated. Accordingly, we modify the trial court's order to strike the added phrase "and with whom the Plaintiff has or has had an intimate or romantic relationship" from the definition of cohabitation.

Affirmed as modified.

HART, GRIFFEN, VAUGHT and ROAF, JJ., agree.

STROUD, C.J., GLADWIN, NEAL and CRABTREE, JJ., dissent.

JOHN F. STROUD, JR., Chief Judge, dissenting. The controlling issue in this case is Gordon Gibson's second point of appeal, that the trial court erred in failing to find that Connie Gibson and Michael Black were living in the same household under the definition of "cohabitation" that was set forth in the June 4, 1999 order that corrected clerical mistakes in the divorce decree. The trial court's failure to terminate Gordon's obligation to pay alimony to Connie under the trial court's own contrived definition of cohabitation is clearly erroneous.

In finding that Connie and Black did not live in the same household, the majority has looked to the concurring opinion in *Smith v. Southern Farm Bureau Cas. Ins. Co.,* 353 Ark. 188, 114 S.W.3d 205 (2003), which was an insurance case concerning who was covered by insurance under the phrase "you or any member of your family residing in your household." In this case, it is clear that Connie and Black resided in the same household, and the trial court erred in holding otherwise. According to Connie, Mike Black moved to Colorado at the end of September 1997. She moved to Lakewood, Colorado, in February/March 1999, and Mike Black moved into that house in July 1999. Connie sold her first house in November/December 2000 and moved into a new house in Wheatridge, Colorado, and Mike Black moved with her into that house as well. Connie admitted that she lived in the same

houses with Mike Black, although she claimed that he was a tenant who paid her $1000 per month in rent. She said that she had written leases with Black for both of the houses in which he had lived with her. However, she admitted that she did not report her "rental income" on her tax return, nor did she inform her insurance agent that she was renting out any portion of her house. Although she denied any romantic relationship with Black, she admitted that she had told him that she loved him, that he spent holidays with her and her family, that he went on vacations with her and her family, and that Black was listed as Mike Gibson on her athletic club membership because she had signed up as a *"household."* (Emphasis added.) She also said that she was lenient when Black got behind on his rent, and that she sometimes allowed him to pay his rent by purchasing items for her from the sporting goods store where he worked, using his employee discount.

The trial court pointed out several different factors that went into her decision that Connie Gibson and Michael Black were not living in the same household; however, all of those factors are irrelevant in light of the definition of "cohabitation" in the divorce decree, which is "spending at least four (4) nights per week from 12:00 a.m. (midnight) until 6:00 a.m. in the same household with another party of the opposite sex with whom the Plaintiff is not married or related." Using that definition, coupled with the fact that Connie admitted that Black lived with her, the only conclusion that can be drawn is that Connie violated the prohibition against cohabitation as defined by the trial court in the parties' decree, as amended by joint motion on June 4, 1999. Gordon was entitled to rely upon the definition of "cohabitation" set forth in the 1999 joint amendment to the divorce decree, and Connie's living arrangements were clearly in violation of that provision.

The majority cites *Herman v. Herman*, 335 Ark. 36, 977 S.W.2d 209 (1998), in which the supreme court reinstated an ex-wife's alimony payments even though she was living in a sexual relationship with another man, holding that her cohabitation had not changed her financial circumstances or lessened her need for alimony. However, *Herman* is inapplicable to this case, as there was no provision in the *Herman* case that cohabitation would terminate alimony, as is the scenario in the present case. Here, the trial judge elected to fashion her own definition of cohabitation, which was more restrictive than the meaning provided in Arkansas case law; therefore, Arkansas case law regarding cohabitation is not applicable.

Although not relevant to the basis of this dissenting opinion, I feel I must comment on Gordon's point of appeal concerning the denial of his motion to deem facts admitted after Connie failed to answer the requests for admissions. On August 8, 2002, Gordon filed his motion to deem facts admitted; Connie filed an answer to that motion on August 19, 2002, and an answer to the requests for admission on August 21. She amended her answer to the motion to deem facts admitted on September 30, 2002, *one day prior to trial*, to deny that she had been served with any requests for admission. The trial judge found that Connie had not received the requests for admissions and denied Gordon's motion to deem facts admitted although Connie had failed to answer them in the required period of time, and even though a disinterested third party had executed a return of service verifying that he had indeed served such documents along with the other documents that Connie does not deny receiving. In denying Gordon's motion to deem facts admitted, the trial judge stated:

> What we have from the Plaintiff [Connie], is her intention that she did not receive the request for admissions. In coupling that with the magnitude of what stands to be lost in this case, I have to accept her intention that she has not received the request for admission when she was served with the other documents, and the Court will deny the motion to deem that the request for admissions be admitted.

Today's majority opinion reinforces that improper basis for the continuation of alimony.

I would reverse and remand for termination of alimony. I am authorized to state that Judges Gladwin and Neal join in this dissent.

TERRY CRABTREE, Judge, dissenting. I write separately to underscore my belief that the trial court turned a blind eye to the undisputed facts of this case. The evidence adduced at trial established that Michael lived in Connie's house; that Michael participated in multiple holiday celebrations with Connie and her family; that Michael accompanied Connie or her family on various vacations including trips to the Bahamas and Disney World; that Connie cooked for Michael; that the couple professed love for each other; that the couple exchanged greeting cards memorializing their love; that Michael was listed on Connie's athletic-club membership as one of her "household" and using the name "Michael Gibson"; and that Michael received mail at Connie's residence addressed to "Michael

Gibson." Although Connie claimed that Michael was merely a tenant in her home, she produced no evidence of any rental payment made from Michael to her. In addition, Connie has never declared any rental payments as income on her income tax returns. These facts taken together clearly demonstrate that Connie and Michael resided in not only the same house but also in the same household.

GLADWIN, J., joins in this dissent.