SLIP OPINION

Cite as 2015 Ark. App. 199

# ARKANSAS COURT OF APPEALS

DIVISION IV
No. CV-14-772

ROBERT SPARKS HIX, M.D.

APPELLANT

V.

MICHELLE LASSONDE HIX

APPELLEE

**Opinion Delivered** MARCH 18, 2015

APPEAL FROM THE CRAIGHEAD COUNTY CIRCUIT COURT, WESTERN DISTRICT
[NO. DR-2000-853]

HONORABLE RANDY F. PHILHOURS, JUDGE

AFFIRMED

## CLIFF HOOFMAN, Judge

Appellant Robert Sparks Hix appeals from the circuit court's order denying his petition to eliminate alimony payments to his ex-wife, appellee Michelle Lassonde Hix. On appeal, appellant argues that the circuit court erred by not eliminating alimony (1) because the court improperly received and considered evidence that the parties had planned during their marriage that appellee would be a stay-at-home mother and (2) because appellee's request for continued alimony was not based on need. We affirm.

The parties were married on June 12, 1993, and they separated on January 11, 2000. Two children were born of the marriage, J.H. (D.O.B. 9/14/97) and A.H. (D.O.B. 12/29/98). On May 21, 2001, a divorce decree was entered, granting primary custody of the children to appellee. Appellant, who is an OB-GYN physician, was ordered to pay monthly child support of $2,750, and in the letter opinion that was attached to the decree, the circuit

SLIP OPINION

court explained that it was deviating upward from the child-support chart based on the fact that appellee's monthly expenses, due to her having custody of the children, were considerably higher than appellant's expenses, while her available resources were much lower. The court found that it was "the desire and consensus between the parties during the course of their marriage that plaintiff would stay home with the children, perhaps even until both of the children got out of high school." The court noted that the children were very young and that even if appellee, who had a Master's degree in social work, returned to the workforce, there would be childcare expenses for which she alone would be responsible. The circuit court also awarded alimony to appellee, explaining that

> [i]n order to rectify economic imbalance in earning power and standard of living according to the facts of this particular case, the Court determines that an award of alimony/spousal support is appropriate. Plaintiff has demonstrated a need for such funds and defendant has demonstrated the ability to pay reasonable alimony. Considering the financial circumstances of both the parties, the financial needs and obligations of both of the parties, the couples' past standard of living, the income of the parties, the resources and assets of each of the parties that are expendable, the amounts which will be available (after entry of the Decree) to each of the parties for the payment of living expenses, the earning ability and capacity of both the parties, the division of property between the parties, the duration of the marriage and the amount of child support ordered paid by defendant, the Court concludes that alimony in the amount of $1,500.00 per month is reasonable in this case, said sum to be payable in advance on the first of each month through the clerk of the Court. Such alimony will terminate upon the death of either of the parties or the remarriage of the plaintiff.

In October 2013, appellee filed a petition to modify child support, claiming that there had been a material change in circumstances based on appellant's increased income. Appellant then filed a counterpetition to eliminate his alimony obligation. He alleged that there had been a material change in circumstances based on the passage of time, in that appellee had been receiving alimony for a significantly longer time than the parties were married; based on

the fact that the children were now much older, which allowed appellee to obtain employment; and based on the fact that appellee "has had more than ample time in which to enter the job market and become employed."

A hearing was held on the petitions on June 18, 2014. Evidence was introduced showing that appellant's annual net income had increased from $98,000 at the time of the divorce to approximately $280,000 at the time of the hearing. Appellant admitted that an increase in child support was warranted based on his current monthly net income of $23,000, although he requested a reduction from the chart amount based on the transportation expenses involved in exercising his visitation with the children. Appellant stated that he currently lives in Fayetteville, while appellee and the children live in Jonesboro, and that he bought an airplane to transport the children to and from visits. Appellant testified that he had remarried, that his current wife was also an OB-GYN physician, and that they have two children together, in addition to J.H. and A.H. Their 2013 tax return showed a combined adjusted gross income of $1,001,059, and appellant stated that he and his wife owned a house, a cabin, three vehicles, a 4-wheeler, an airplane, and a half-share in a ski boat. According to appellant's affidavit of financial means, his total monthly expenses were $16,323.16, and he admitted that he had $7,000 in profit each month after all expenses were paid, in addition to his wife's income.

Appellant testified that he was requesting an elimination of alimony because circumstances had changed since his divorce. He admitted that he had originally felt it was necessary for appellee to stay home with the children through high school to be a good

3

mother but stated that he had since changed his mind. He testified that the passage of time had also changed the situation, as the boys were now older and in school, allowing appellee to work. The parties' oldest son was currently sixteen years old and had his driver's license, although he did not have a car, and their youngest son was fifteen years old. Appellant testified that he had promised each child that he would match their savings so that they could buy a car; however, he also indicated that he had expressed his unwillingness to pay for car insurance when he had no control over the details of when and how they were allowed to use the car. He admitted that his sons were involved in sports and school activities and that appellee was the primary person who provided transportation to and from these activities. Nonetheless, he claimed that appellee could work more hours than she was currently working and still manage the boys' transportation needs, as he and his current wife both work full time. When questioned about appellee's affidavit of financial means, appellant agreed that it showed a monthly budget deficit of approximately $1,500, while he had a monthly budget surplus of $7,000. He testified that if she were to work full time, however, she would not have a deficit.

Appellee stated that after she and appellant married in 1993, she obtained her Master's degree in social work while appellant finished medical school. She was then employed full time at Arkansas Children's Hospital during appellant's first two years of residency. Appellee testified that she stopped working when their first son was born in 1997, as was the parties' intent at the time, and she allowed her license to become inactive. She renewed her license in 2005, when her youngest son entered kindergarten, and began working as a mental health therapist at Families, Inc. She stated that she is an independent contractor and averages two

to three billable hours per week, at $50 per hour, although she also has to perform an average of one and a half hours of non–billable activities for each hour that she bills. She indicated that she schedules clients from 10:00 a.m. to 3:00 p.m. to fit both her and her clients' schedules and that she uses the hours from 8:00 a.m. to 10:00 a.m. to perform household duties such as cleaning, laundry, cooking, and shopping, for which she is solely responsible.

According to appellee, this average of ten hours of employment per week allows her to transport the boys to and from school and sports activities. She testified that her oldest son plays school varsity soccer and club soccer and that these practices occur nearly year round. In addition, her youngest son plays basketball. Appellee stated that she also attends the boys' games and tournaments, many of which are out of town, and that she is their only cheering section. In the summer, appellee testified that her oldest son works as a lifeguard and that she currently has to drive him to and from his job, in addition to the boys' sports camps, practices, and church–youth–group activities. She introduced into evidence a journal of the boys' activities for one week as an example of their typical schedule. Appellee testified that if she had a normal full-time work schedule, she would not be able to transport the boys to their activities, and she felt that it was important for her children to socialize and be a part of these activities.

Appellee testified that her current monthly expenses were $6,082.04 and that she did not receive a sufficient amount of income from alimony, child support, and wages to cover these expenses. While she agreed that it would be helpful if her children had their own vehicle and could drive themselves to their activities, she testified that she could not afford to

5

either buy them a car or pay for their car insurance. She requested that her alimony payments continue while the boys remained in high school so that she could maintain her flexible schedule. She also stated that she would need some additional time to build her social-work practice, as she would be forty-six years old at the time both children had graduated and would just be starting a full-time practice, while appellant had a twenty-year head start in his career. Appellee testified that the average income for a licensed clinical social worker is $50,000 to $55,000 per year and that her earning potential is vastly inferior to appellant's.

Based on the evidence presented at the hearing, the circuit court increased child support to $4,891 per month after applying the child-support chart to appellant's current net income. The court also found that appellant's alimony obligation should be phased out beginning with the oldest child's high-school graduation in May 2016, at which time alimony would be reduced by 20%, to $1,200 per month. Each year thereafter, the court ordered that alimony continue to be reduced by $300 until it was entirely phased out. In making this decision, the circuit court recognized the finding in the parties' divorce decree that they had agreed for appellee to be a stay-at-home mother, potentially until the children had graduated high school, and found that the children benefitted from appellee staying at home. The court found that a phase-out of alimony was appropriate given the continuing at-home obligations of appellee but that perpetual alimony was not warranted in this case based on the fact that appellee was well educated. The circuit court's order was entered on July 9, 2014, and appellant filed a timely notice of appeal from this order. He challenges only the circuit court's decision to continue his alimony obligation and raises no arguments on appeal regarding the

SLIP OPINION

increase in his child support.

Appellant argues that the circuit court erred in not eliminating alimony. He specifically contends (1) that the court improperly received and considered evidence in its analysis that the parties had planned during their marriage for appellee to be a stay-at-home mom and (2) that appellee's request for alimony was based on want rather than need.

A modification of an alimony award must be based on a significant and material change in the circumstances of the parties, and the burden of showing such a change in circumstances is on the party seeking the modification. Ark. Code Ann. § 9-12-312(a)(7) (Supp. 2013); *Herman v. Herman*, 335 Ark. 36, 977 S.W.2d 209 (1998). The purpose of alimony is to rectify the frequent imbalance in the earning power and standard of living of the parties in light of the particular facts of each case, and the primary factors to be considered in making or changing an award of alimony are the need of one spouse and the ability of the other spouse to pay. *Herman, supra*. Secondary factors that may be considered include the financial circumstances of both parties, the couple's past standard of living, the amount and nature of the parties' current and anticipated incomes, the extent and nature of each party's resources and assets, the amount of income of each that is spendable, the health condition and medical needs of each party, the duration of the marriage, the amount of child support, and the earning ability and capacity of each party. *Johnson v. Cotton-Johnson*, 88 Ark. App. 67, 194 S.W.3d 806 (2004). An award of alimony is a matter lying within the discretion of the trial court, and it will not be reversed absent an abuse of that discretion. *Herman, supra*.

Appellant first argues that the circuit court in this case erred by receiving and

considering evidence in its alimony analysis that the parties had planned during their marriage for appellee to be a stay-at-home mother. As appellant asserts, in the parties' divorce decree, the trial court had referenced the parties' plan for appellee to stay home with the children in its paragraph discussing child support, not alimony. Appellant objected at the hearing to testimony regarding this finding in the decree, arguing that this agreement between the parties during their marriage was not a proper factor for the circuit court to consider in deciding alimony. The circuit court ruled that it would allow the testimony for the limited purpose of establishing a benchmark in order to determine whether there had been a material change in circumstances since the original award of alimony.

The circuit court did not err in admitting the evidence for this purpose, as appellant was required to prove a material change in circumstances since the parties' divorce decree, and it was therefore necessary for the circuit court to determine what the circumstances were at the time of the divorce. While the statement in the divorce decree about the parties' intention for appellee to be a stay-at-home mother was included only in the discussion on child support, this finding was also pertinent to many of the factors that were expressly considered by the trial court in its original award of alimony, such as appellee's need and the parties' incomes, earning capacities, and resources.

Furthermore, in addition to the fact that this evidence was relevant to establish a benchmark for modification of alimony, appellant has cited no authority for his contention that the parties' plan for appellee to stay at home was not an appropriate factor for the circuit court to consider in its alimony analysis. The list of factors set out above that trial courts may

8

SLIP OPINION

consider in their decision on whether to award alimony is not exclusive, as alimony must be determined in light of the particular facts in each case. *Boyles v. Boyles*, 268 Ark. 120, 594 S.W.2d 17 (1980). As appellee asserts, both this court and our supreme court have previously held that a party's status as a stay-at-home parent is in fact a proper consideration in awarding alimony. *See, e.g.*, *Taylor v. Taylor*, 369 Ark. 31, 250 S.W.3d 232 (2007) (affirming award of alimony and citing as one factor the parties' arrangement during their marriage for the wife to stay home and care for the children); *Elliot v. Elliot*, 2012 Ark. App. 290, 423 S.W.3d 111 (affirming trial court's award of indefinite alimony where parties had agreed for wife to stay home with children, who were now school aged); *Gilliam v. Gilliam*, 2010 Ark. App. 137, 374 S.W.3d 108 (affirming trial court's consideration of parties' intention for wife to be a stay-at-home mother in its alimony award); *Johnson*, *supra* (affirming award of alimony for life where trial court considered, among other factors, that parties had decided wife's career would be subordinate to husband's). Thus, there is no merit to appellant's argument that the circuit court erred by considering this evidence in its decision on whether to modify the alimony award in this case.

Appellant next argues that the circuit court erred in not eliminating alimony where the evidence in this case showed that appellee's request for continued alimony was based on "want" and not "need." In support of this argument, appellant contends that: (1) the children are older and in school; (2) although appellee is healthy, has a master's degree in social work, and has the ability to earn substantial income, she "chooses" not to work; (3) the court improperly used as a factor the supposed benefits and virtues of being a stay-at home mom;

and (4) the alimony and child support were set in an amount that exceeded even the inflated expenses of appellee. None of these arguments demonstrate an abuse of discretion by the circuit court in its alimony award.

With respect to the children's older age and the fact that they are now in school, appellant asserts that the boys were only two and three years old at the time the parties divorced. Now that they are teenagers who are in school and who will soon both be driving, appellant argues that they no longer need appellee's "complete, hands-on care and time." While the circuit court considered the children's older age as a change in circumstance, as it modified the alimony award by phasing it out as the oldest child graduated from high school, the court also heard evidence that neither child was currently able to transport themselves to and from school and sports activities. Instead, appellee testified that she is the primary means of transport, that she believed it was important for the children to be involved in their activities, and that it was also important for her to attend their games and support them. The court noted that its decision might be different if the children were able to drive themselves but stated that this was not the situation at the time of the hearing.

Appellant also argues that appellee is a licensed clinical social worker capable of earning substantial income but that she instead "chooses" not to work. He presented this same argument at the hearing and extensively cross-examined appellee regarding the details of her work schedule. He contends that appellee could earn at least the amount she currently receives in alimony if she were to work during all of the hours that the boys are in school. However, the circuit court specifically found that appellee's inability to work additional hours

at the present time was not the result of "sloth." With regard to the potential amounts that appellant projected appellee could earn if she were to work more hours at the rate of $50 per hour, the court credited appellee's testimony that two-thirds of her time spent working was non-billable. Based on this testimony, the circuit court found that appellee actually earns $25 or $30 per hour instead of $50. The court therefore rejected appellant's argument that appellee did not need alimony due to her earning potential, finding that the argument was not fair. We rejected a similar argument in *Delacey v. Delacey*, 85 Ark. App. 419, 155 S.W.3d 701 (2004), where the appellant contended that the appellee would not be in need of alimony if she were to work full time instead of part-time. In affirming the trial court, we noted that the appellee had testified that she preferred to work part-time so that she could raise her children and also that the appellant's earning capacity would still be far greater even if the appellee did work more. *Id.*

Appellant also asserts that the circuit court improperly used as a factor the alleged benefits and virtues of being a stay-at-home mother. However, as was discussed above, appellant is simply incorrect that this is not a factor that may be considered by a trial court. *See Taylor, supra; Delacey, supra.* The circuit court in this case did not err in finding that the children benefitted from having appellee stay at home, even though the children are now school aged, as the evidence was undisputed that appellee is their primary means of transportation and their only cheering section at most sporting events.

Finally, appellant contends that the amount of child support and alimony to which appellee is now entitled after the modification exceeds even her "inflated" expenses that were

SLIP OPINION

listed in her affidavit of financial means. He asserts that appellee will now receive $6,391 per month, while her expenses were listed as $6,082.04. As appellee responds in her brief, however, appellant presented no evidence to the circuit court that her expenses were inflated or otherwise unreasonable. In fact, when directly questioned as to whether her listed expenses were reasonable and necessary, appellant testified that he could not give an opinion on that. While his counsel argued that appellee's expenses were inflated, arguments of counsel are not evidence. *Crane v. Taliaferro*, 2009 Ark. App. 336, 308 S.W.3d 648. Thus, the circuit court had absolutely no evidence before it to determine how much, if at all, appellee's expenses were inflated.

Furthermore, the fact that appellee's income from child support and alimony may slightly exceed her stated expenses does not automatically mean that the circuit court abused its discretion. The court heard evidence that appellee could not afford car insurance or gas for her sons and that she had not been able to save any money toward their college education. The evidence also showed that appellee was currently driving a fourteen-year-old vehicle with more than 165,000 miles. We have affirmed an alimony award that exceeded the recipient's expenses where there was evidence that the recipient may have additional future expenses, such as having to buy a new vehicle. *Matthews v. Matthews*, 2009 Ark. App. 400, 322 S.W.3d 15. *See also Vigneault v. Vigneault*, 2010 Ark. App. 716, 379 S.W.3d 566 (holding that the amount of alimony was not excessive solely because the award modestly exceeds the appellee's claimed expenses). The situation in the present case is distinguishable from *Spears v. Spears*, 2013 Ark. App. 535, which is cited by appellant, as in that case the appellee was receiving

$4,000 per month in alimony, and the total award exceeded her expenses by $1,600, more than five times the amount of overage that exists here.

In modifying the alimony award in this case, the circuit court considered the circumstances existing at the time of the original award, the length of time that appellant had been paying alimony, the children's current needs, and the differences between the parties' earning capacities and resources.  Appellant admits that he has the present ability to pay alimony, and under the circumstances in this case, it was not an abuse of discretion for the court to find that appellee has a need for alimony until the oldest child graduates from high school, at which time it will begin to be phased out.  We therefore affirm.

Affirmed.

GLADWIN, C.J., and GLOVER, J., agree.

*Scott Emerson, P.A.*, by: *Scott Emerson*, for appellant.

*Owens, Mixon & Gramling, P.A.*, by: *H. Clarke Mixon* and *James F. Gramling, Jr.*, for appellee.