6

James Earl TAYLOR *v.* Katie Coreen TAYLOR

CA 82-203                                          648 S.W.2d 505

Court of Appeals of Arkansas
Opinion delivered March 23, 1983

*Mobley & Smith,* by: *William F Smith,* for appellant.

*Boyett, Morgan & Millar, P.A.,* by: *Mike Millar,* for appellee.

LAWSON CLONINGER, Judge. The appellant, James Earl Taylor, has filed appeals from two orders of the trial court, and the cases have been consolidated for hearing before this

court. The first order, entered as of March 1, 1982, found appellant in contempt for failure to pay alimony, and awarded judgment for the amount in arrears to appellee, Katie Coreen Taylor. At the same time, the court found that there had been no change in circumstances and denied appellant's petition to reduce his alimony payments. The second order of the trial court, entered on July 20, 1982, granted judgment against appellant for the amount in arrears since the previous order. At that time, the trial court declined to find appellant in willful violation of the court's order, and ruled that the issue of modification of alimony payments was not then before the court.

The trial court's second order is nothing more than an award of judgment for the amount found to be in arrears pursuant to the first order, and the second order is entirely proper if there is no error in the first order. The only question for this court, then, is whether there was such a change in circumstances as to justify modification of the alimony payments on March 1, 1982.

We reluctantly reverse the decision of the chancellor that there was not such a change in circumstances as would justify a reduction in the alimony payments.

The parties were divorced on October 11, 1976. The property of the parties was divided by the court decree, and appellant was ordered to pay child support of $200 per week and alimony of $200 per month. After the only child of the parties reached majority, the child support would cease and the alimony payments would increase from $200 a month to $125 a week. The child attained majority before the times involved in this case, therefore it is necessary to consider only the order to pay $125 a week alimony.

At the time of the divorce in 1976, appellee was awarded the home, all the home furnishings, and a savings account of $11,500. Appellant was awarded all the other property of the parties, which consisted of all the shares of stock in a corporation, Taylor Well Drilling Company, Inc., twelve acres of land upon which the corporation did business, fifty head of cattle, and a 150-acre farm. Appellant testified that

the company owed close to $200,000 at the time of the divorce. Between 1977 and 1981, all the shares of stock of the corporation were transferred to appellant's present wife, Mildred Brown Taylor. The only monetary consideration for the shares was $1,082 for the last remaining eleven shares on September 23, 1981.

John Stephen Osborne, a certified public accountant who kept the books for the corporation since 1978, testified that Mildred Brown Taylor was forced to sign a note for $100,000 for corporate debts; that $15,000 was borrowed from her bank account to pay corporate workers' compensation insurance; and that $40,000 was borrowed from her bank account to pay bills of the corporation.

There was unrebutted testimony that appellant's cattle and farm were sold to pay the bills of the corporation. Testimony of John Stephen Osborne and R. E. Pruitt, Jr., a licensed public accountant who kept the books of the corporation until October 1977, testified that the corporation showed a loss of $54,873 in 1976; a profit of $5,364 in 1977; a loss of $2,700 in 1978; a profit of $7,200 in 1979; a loss of $43,849 in 1980; and a loss of $24,357 for the year ending June 30, 1981. There was evidence that appellant and Mildred Brown Taylor had tried to sell the business since 1979 but had been unable to do so; that the corporation is currently indebted in the approximate sum of $200,000 on its equipment and back bills. John Stephen Osborne recommended placing the company in bankruptcy in 1979, and recommended that no more personal funds be put into the corporation at the time of the hearing on March 1, 1982. The evidence indicates that the operation of the corporation is at a virtual standstill.

There is little evidence of change in the affairs of Taylor Well Drilling Company, Inc. between the time of the divorce and the time of the hearing on March 1, 1982. The corporation suffered a large net loss the year before the divorce, a small net profit or small net loss from 1977 through 1979, and large losses the two years before the hearing. However, appellant personally received wages of $13,900 from Taylor Well Drilling Company, Inc. in 1976;

$15,075 in 1977; $18,200 in 1978; $14,300 in 1979; $8,250 in 1980; and $5,312 in 1981. At the time of the March 1, 1982 hearing appellant was unemployed and he testified that his only income was $79.00 a week in unemployment benefits.

We are skeptical of some of appellant's actions, just as the trial judge appeared to be, and we believe that many of his problems are of his own making. In 1976 he consented to the entry of a decree requiring him to pay a total of $250 per week in child support and alimony, at a time when his weekly net income was only $191. He testified that at that time he had to borrow from the corporation in order to make his payments, and he had to borrow from his current wife to keep the corporation out of bankruptcy.

Changes arising from personal decisions and choices within the control of appellant cannot be urged as a change in circumstances to justify reduction of alimony. *Hurley* v. *Hurley,* 255 Ark. 68, 498 S.W.2d 887 (1973). Neither can the liberality of the original allowance afford grounds for modification. *Lively* v. *Lively,* 222 Ark. 501, 261 S.W.2d 409 (1953). However, a decrease in the income of appellant is a factor to be considered by the chancellor in determining whether to reduce the amount of alimony. *Brown* v. *Brown,* 269 Ark. 112, 598 S.W.2d 747 (1980). The burden was on appellant to show that a change in circumstances justified a reduction, *Riegler* v. *Riegler,* 246 Ark. 434, 438 S.W.2d 468 (1969), but we believe that in spite of some of his questionable dealings appellant has met his burden.

There is evidence that Taylor Well Drilling Company, Inc. was in financial difficulties in 1976, but appellant was receiving a salary at that time, and he continued to receive some income from the corporation through 1981. In 1976, although he was unable to meet his weekly support and alimony payments out of his earnings, he was able to borrow the difference from the corporation. At the time of the hearing on March 1, 1982, he had no income except unemployment benefits, and he could no longer sell assets or borrow from the corporation. The financial plight of Taylor Well Drilling Company, Inc. has grown progressively worse. There is no evidence that the corporation was

insolvent in 1976. In 1979, however, a certified public accountant recommended bankruptcy, and the evidence indicates that the corporation could not be sold for enough to pay its debts. Lending credence to that evidence is the fact that at a hearing subsequent to March 1, 1982, appellant, through his attorney, offered to sign over the entire corporation to appellee.

The evidence is that the economic hard times for building and well drilling operations, the current 17% interest paid for borrowed money, and appellant's unemployment are not the result of events within the control of appellant. The transfer of the stock of Taylor Well Drilling Company, Inc. is a suspicious circumstance, but all the evidence indicates that the stock had little if any value at the time of the transfers. In addition, there is evidence that Mildred Brown Taylor has lost a considerable amount of her personal funds in trying to save the corporation.

Under all the evidence, it has become impossible for appellant to comply with the orders of the court. The decision of the chancellor is reversed, and the case will be remanded to the trial court for a determination of the amount appellant should pay. There is no question of appellee's need, and the order of the court may be a temporary modification on the condition that if appellant obtains work the alimony payments would increase proportionately. See *Peters* v. *Peters*, 238 Ark. 361, 381 S.W.2d 748 (1964).

Reversed and remanded.

CRACRAFT and COOPER, JJ., dissent.

GEORGE K. CRACRAFT, Judge, dissenting. I respectfully dissent for the reason that I must conclude that the court has merely substituted its judgment for that of the chancellor who was in a far superior position to assess the evidence. Even a material change in circumstances will not relieve one of his judicially imposed obligations if that change, which makes compliance more difficult or even impossible, is

brought about by his own action. It is clear to me that this is why the chancellor ruled as he did.

The majority note that there was little change in the affairs of the drilling company between the time of the divorce and the time of the hearing. They base their ruling in part on the fact that appellant was not working for the company and was instead drawing unemployment.

The record shows that although appellant agreed to the amount of alimony awarded he was back in court for modification within six months of the entry of the first order and back again six months after that. He had remarried within four months of the decree and shortly after that he transferred 49% of the company stock to his new wife. The following year he transferred another 41% to her and subsequently she became the sole owner of the company stock. His wife was operating the drilling company but she had hired someone else to do the job appellant formerly did. Appellant had owned a farm, livestock, a home, and substantial amounts of drilling equipment and motor vehicles. He sold the home, farm and the livestock and with his new wife purchased a new home on a 9 1/2 acre lot.

The majority are "skeptical of some of appellant's actions, as the trial court appeared to be, and believe that many of his problems are of his own making." Rule 52 (a), Arkansas Rules of Civil Procedure, and all of our case law dictate that we should defer to the superior position of the chancellor in assessing the weight to be given the testimony. He not only observed the witness on this occasion but he had the benefit of the complete file and several years' experience in dealing with these parties. We would be justified in concluding that these factors added weight to the chancellor's conclusion. I am unwilling to second guess him from a record which shows only the course of the latest battle.

COOPER, J., joins in this opinion.