Jon G. MORSE *v.* Teri Morse CHAPMAN

CA 06-1238                                                    262 S.W.3d 178

Court of Appeals of Arkansas
Opinion delivered September 12, 2007

*James R. Filyaw*, for appellant.

*Gant & Barlow, LLP*, by: *Paul D. Gant*, for appellee.

SAM BIRD, Judge. This appeal arises out of an order of the Crawford County Circuit Court holding appellant Jon Morse in contempt for failure to pay past-due alimony and modifying the award of future alimony. Appellant has appealed the trial court's order, arguing that the trial court erred in refusing to abate the alimony payable under the original decree of divorce by appellant to appellee Teri Morse Chapman. We reverse and remand.

The parties were married in Arkansas on October 26, 1984. At that time, appellant worked at the Joint Readiness Training Center (JRTC) at Fort Chaffee in Fort Smith. Sometime after the marriage the JRTC was transferred to Louisiana, and the parties moved so that appellant could continue working for the Army.

On September 25, 2002, the parties were divorced by entry of a consent judgment of the district court of Vernon Parish, Louisiana. There were no children born of the marriage. At the time of the divorce, appellee was working at Lowe's and appellant was still working for the Army. Appellant agreed to pay $600 per month in alimony to appellee, which provision was included in the judgment of divorce.

In June 2005, appellee moved back to Arkansas and continued her work as a pricing coordinator for Lowe's. Sometime in 2005, appellant lost his job and also moved back to Arkansas. On April 13, 2006, appellee filed a petition for contempt in the Crawford County Circuit Court indicating that the Louisiana consent judgment had been transferred to the Crawford County Circuit Court; that the Louisiana court had entered an order on June 25, 2003, holding appellant liable for past-due alimony; and that appellant was in arrears on alimony payments. Appellee asked the court to find appellant in contempt, order him to pay the past-due alimony, and enter judgment for all accrued arrearages. Appellant filed a response to the petition admitting the arrearages, asking for credit for payments made since entry of the Louisiana judgment, and requesting the court to modify the original decree regarding alimony because there had been a substantial change in circumstances.

At a hearing on the matter, appellant testified that at the time of the divorce he was earning $18.00 per hour working as an electronics technician for the United States Government. On cross

examination, he admitted that he had lost his driver's license for failure to have insurance. He testified that he was terminated because the loss of his driver's license caused problems with his work. After he lost his job in 2005, he moved to Arkansas and got a job as a security guard with Securta's Security Company at the Tyson chicken plant in Van Buren earning $7.35 per hour. He said that he could not go back into the electronics business because his job with the Army was to help soldiers get ready for the Iraqi theater with equipment called "miles gear," and that his knowledge and skill were not transferable into another electronics field because there is no "miles gear" anywhere else. He added that there were no similarities between what he did in the Army and electronics factory work. He also testified that he had completed the twelfth grade, was forty-five years old, and had some medical problems with bone spurs, torn rotator cuffs, and torn tendons in his shoulder. He said that he felt that the fact that appellee now earned more than he did constituted a change of circumstances such that the court should end his alimony obligation.

Appellee testified that she worked at Lowe's as a pricing coordinator making $10.47 per hour and that she had been with Lowe's for twelve years. She said that she had one year of college, was forty-eight years old, and had no dependents.

The trial court found appellant in contempt, sentencing him to ninety days in jail, suspended if he made a monthly payment of $100 until the amount in arrears was paid. The trial court also found a change of circumstances and reduced the alimony from $600 to $500 per month. It based the alimony award on its finding that the change of circumstances was within appellant's control, that he was capable of making more, and that the reason he was not making more money was because of something he did to himself and not something someone else did. The trial judge stated that he thought that "the case law is clear that if there's a finding that he's capable of making more, then I can impute what he might be able to make and come up with a determination on that. And that's where I am." The trial judge also indicated that its award of alimony was based on the fact that appellant initially agreed to pay $600 per month. Appellant filed this appeal from the judgment of modification only. He does not appeal from the judgment ordering him to pay past-due alimony.

The purpose of alimony is to rectify economic imbalance in the earning power and the standard of living of the parties to a divorce in light of the particular facts of each case. *Harvey v. Harvey,*

295 Ark. 102, 747 S.W.2d 89 (1988). Modification of an award of alimony must be based on a change of circumstances of the parties. *Herman v. Herman,* 335 Ark. 36, 977 S.W.2d 209 (1998). The burden of showing such a change in circumstances is on the party seeking the change in the amount of alimony. *Id.* A trial judge's decision whether to award alimony is a matter that lies within his or her sound discretion and will not be reversed on appeal absent an abuse of that discretion. *Davis v. Davis,* 79 Ark. App. 178, 84 S.W.3d 447 (2002).

On appeal, appellant argues that the trial court abused its discretion in failing to terminate his payment of alimony to appellee because appellee now earns more than he does and because appellee has no need of alimony. Appellant also argues that the trial court's finding that appellant was responsible for his inability to make more money is not supported by the evidence. Alternatively, he claims that, even if his job loss was his fault, appellee has no need of alimony. He argues that the court's award operates as a punitive measure by forcing him to pay almost two-thirds of his take-home pay to appellee, who has no need of it.

### Imputed Income

To determine whether the trial court abused its discretion in failing to terminate appellant's obligation to pay alimony in this case, we turn to the primary factors that a court should consider in determining whether to award alimony: the financial need of one spouse and the other spouse's ability to pay. *Herman,* 335 Ark. 36, 977 S.W.2d 209 (1998). In making his finding regarding appellant's ability to pay, the trial judge stated that he thought that "the case law is clear that if there's a finding that he's capable of making more, then I can impute what he might be able to make and come up with a determination on that." While the trial court did not indicate upon what case it was relying, the seminal case on this issue — and the only case cited by appellee in support of the circuit court's decision to impute income to appellant — is *Grady v. Grady,* 295 Ark. 94, 747 S.W.2d 77 (1988).

In *Grady,* Mr. Grady, a staff attorney for the Department of Correction for twelve years, making approximately $1900 a month, resigned from his position after he separated from his wife and began a solo law practice where his estimated net income was $81 a week. The parties had six children, four of whom were living at home at the time of the divorce hearing. Mrs. Grady was forty-five years old at the time of the divorce, had an eighth-grade

education, had no special training, and spent most of the twenty-two year marriage as a housewife caring for the children. The circuit court awarded custody to Mrs. Grady and ordered Mr. Grady to pay $600 a month in child support and $10 a year in alimony. On appeal, Mr. Grady argued that the court could not base a child-support award on his earning capacity when in fact his earnings were considerably less at the time of the divorce. The supreme court disagreed. The supreme court stated that there are circumstances under which it is appropriate to order child support based on a party's earning *capacity* rather than on actual earnings. The court determined that "[a] supporting spouse does not have total discretion in making decisions which affect the welfare of the family, if the minor children have to suffer at the expense of those decisions." *Id.* at 98, 747 S.W.2d at 79. Noting that a determination of the proper circumstances under which to impute income is often difficult, the court stated:

> On the one hand, the courts must not unduly interfere with the personal lives and career choices of individuals merely because they have been involved in a divorce. On the other hand, because there has been a divorce, the courts are thrust into the middle of the parties' personal lives in order to protect the interests of the minor children who are also unwilling participants in the divorce.

*Id.* (quoting *Rohloff v. Rohloff,* 411 N.W.2d 484 (Mich. Ct. App. 1987)).

We hold that the circuit court's finding imputing income to appellant in this case was an abuse of discretion. The holding in *Grady* authorizing a circuit court to impute income concerned child support. The supreme court did not apply this reasoning to the award of alimony in that case, nor has it applied the rule in *Grady* to a case in which child support was not awarded. While we do not decide today that income may never be imputed to support an award of alimony, we hold that it was not appropriate in this case.[1] In this case, where appellant's income had decreased by more than 50% since his initial agreement to pay alimony,

---

[1] The dissent states that we contend that "our supreme court allows imputed income for alimony purposes only where child support was also awarded." This is a mischaracterization. We merely note that income was imputed in *Grady* with regard to child support only and that the supreme court has not extended the reasoning in *Grady* regarding imputed income to a case involving alimony only. We decline to do so here.

where appellee made more than appellant and had no dependents, and where the circuit court's award of alimony required appellant to pay over one-half of his take-home pay to appellee, we hold that the trial court abused its discretion in imputing income to appellant and finding that appellant had the ability to pay.

*Issue of Need*

Turning to the other factor — the financial need of one spouse — we find no evidence of need to support an award of alimony. The initial award of alimony was based upon appellant's agreement to pay. There is no evidence in the record to suggest that appellee needed alimony then or that she needs alimony now. The trial court stated that, in addition to its finding imputing income to appellant, "the other thing is I took into consideration that this was a consent judgment that he entered into, a consent order to pay $600." This is simply not sufficient to support a finding of need where a party seeking a change in the amount of alimony has shown a change in circumstances.

■ Accordingly, because we find no evidence in the record to support a finding that appellant had the ability to pay alimony or that appellee had a financial need of alimony, we hold that the circuit court's decision not to terminate alimony in this case was an abuse of discretion. We reverse and remand for entry of an order consistent with this opinion.

Reversed and remanded.

MARSHALL, VAUGHT, and MILLER, JJ., agree.

GLADWIN and BAKER, JJ., dissent.

KAREN R. BAKER, Judge, dissenting. The majority's opinion is flawed in three distinct respects. First, it misstates the holding in the seminal case upon which it bases its decision. Second, it ignores critical testimony relied upon by the trial court in reaching its decision. Third, the disregard of this testimony leads to the improper shifting of the burden of proof.

First, the majority misstates the holding in *Grady v. Grady*, 295 Ark. 94, 747 S.W.2d 77 (1988). The majority acknowledges that *Grady* is "the seminal case on this issue." "This issue" is whether the trial court erred in imputing income to appellant when considering whether to modify the court's previous award of

alimony. Despite the majority's recognition that *Grady* controls, it contends that the imputation of income in *Grady* was limited to the child-support obligation in the case, and that our supreme court allows imputed income for alimony purposes only where child support was also awarded. The majority completely ignores our supreme court's specific proclamation in *Grady* that imputation of income is permitted in spousal support cases:

> We have not dealt with this issue directly, but elsewhere it has been held that the court may consider the fact that a supporting spouse voluntarily changes employment so as to lessen earning capacity and, in turn, the ability to pay *alimony and child support. Camp v. Camp,* 269 S.C. 173, 236 S.E.2d 814 (1977). A court may in proper circumstances *impute an income to a spouse* according to what could be earned by the use of his or her best efforts to gain employment suitable to his or her capabilities. *Klinge v. Klinge,* 554 S.W.2d 474 (Mo. 1977).

*Grady*, 295 Ark. at 97, 747 S.W.2d at 78–79 (emphasis added); *see also Christianson v. Christianson,* 671 N.W.2d 801, 806 (N.D. 2003) (recognizing that other states have permitted imputing income in spousal support cases, citing *Grady*, but holding that imputation not appropriate on facts of the case); *Moore v. Moore,* 242 Mich. App. 652, 619 N.W.2d 723 (2000); *In re Marriage of Carrick,* 560 N.W.2d 407 (Minn. Ct. App. 1997).

Our supreme court in *Grady* held that a trial court may impute income for alimony and child support purposes. This premise is clear and easily interpreted. What is unclear is how the majority embraces our supreme court's explanation in *Harvey v. Harvey*, 295 Ark. 102, 747 S.W.2d 89 (1988), decided the same day as *Grady*, that the purpose of alimony is to rectify economic imbalance that includes the earning power of the parties, while completely eviscerating that purpose by holding that our supreme court allows imputation of income to rectify economic imbalance only when a child support order is also entered. I cannot imagine our supreme court adopting the limitation set out by the majority; however, had the supreme court intended to allow imputation of income for spousal support only when a child support order is entered, they certainly could have used this limiting language. This court is without power to modify and limit the supreme court's specific statement allowing imputation of income in alimony cases found in *Grady*. The majority implicitly acknowledges that it cannot overrule our supreme court when it inserts, almost as an

afterthought: "While we do not decide today that income may never be imputed to support an award of alimony, we hold that it was not appropriate in this case."

Apparently the majority finds that it is not appropriate in this case because no child-support order was entered. The majority holds that the trial court abused its discretion in imputing income to appellant, and finding that appellant had the ability to pay the reduced alimony award, by focusing on the decrease in appellant's wages and emphasizing that appellee "had no dependents," i.e., a child. Not once in discussing imputation of income does the majority address the fact that appellant's wages were reduced when he lost his former job because he lost his driver's license. In appellant's testimony, he explained that he lost his driver's license because he did not have insurance. The majority ignores the fact that appellant's reduction in income was related to his refusing to purchase, or not being able to obtain, insurance. Nothing in the majority's opinion explains how this fact was an improper consideration in the trial court's decision that, although alimony should be reduced, it should not be eliminated. Certainly the majority does not explain how the trial court abused its discretion in finding that appellant had the ability to pay the reduced alimony award. The ability to pay is not limited to a supporting spouse's current wages, as the majority indicates, but includes what could be earned by the use of his or her best efforts to gain employment suitable to his or her capabilities. *Grady, supra.*

The decision to grant alimony lies within the sound discretion of the circuit court and will not be reversed on appeal, absent an abuse of discretion. *Taylor v. Taylor*, 369 Ark. 31, 250 S.W.3d 232 (2007). An abuse of discretion means discretion improvidently exercised, i.e., exercised thoughtlessly and without due consideration. *Southwestern Bell Yellow Pages, Inc. v. Pipkin Enterprises, Inc.*, 359 Ark. 402, 198 S.W.3d 115 (2004) (citing *Arnold v. Camden News Publ'g Co.*, 353 Ark. 522, 110 S.W.3d 268 (2003)). Our supreme court and this court have emphasized in the past that the circuit court is in the best position to view the needs of the parties in connection with an alimony award. *See Taylor, supra.*

Despite this standard of review, the majority reaches its conclusion that the trial court abused its discretion by ignoring evidence that the trial court specifically considered in reaching its decision. This is the second distinct flaw in the majority's reasoning. Based on appellant's testimony explaining the loss of his driver's license and job, the trial court found as follows:

> Mr. Morse, part of these circumstances are well within your control and I am basing this on the fact that what caused you not to be able to make the amount of money that you were making seems to me to be under your control and not someone else's. You got terminated for reasons that were partially or totally within your control.
>
> . . . .
>
> . . . he's capable of making more and the reason he isn't making more is something he did. The case law is clear that if there's a finding that he's capable of making more, then I can impute what he might be able to make and come up with a determination on that. He said that he lost his $18.00 an hour job because of things he did, not because they just terminated him or the job ended. I think that's the difference here. I think there's other jobs he could have done. He lost a good job because of his own doing and that's my reasoning.

The trial judge correctly stated the law and relied upon it to impute income. *See Hurley v. Hurley*, 255 Ark. 68, 498 S.W.2d 887 (1973) (holding that changes that are the result of decisions made by the obligor cannot be urged as a change in circumstances to justify reduction of alimony); *see also Taylor v. Taylor*, 8 Ark. App. 6, 648 S.W.2d 505 (1983).

The majority ignores the evidence. Then it ignores our standard of review. The majority fails to explain how the trial judge acted thoughtlessly or without due consideration when he specifically stated that the reason appellant was terminated from his job was because he lost his license which was within appellant's control. The trial court specifically found appellant's fault was not an excuse for failing to meet his court-ordered obligations. Appellant was found in contempt and ordered to pay arrearages. Although the trial court reduced future support obligations, it refused to terminate the support altogether, specifically finding that, "he is capable of making more." The trial court's decision clearly was not exercised thoughtlessly and without due consideration. The majority also fails to explain how this court is in a better position than the circuit court to determine the need of one party and the ability to pay of the other in connection with the award of alimony, even though precedent clearly requires deference to the circuit court because that court is in the best position to view the needs of the parties in connection with an alimony award. *See Taylor, supra.*

The majority can reach its conclusion only by assuming that it, rather than the trial court, is in the "best position" to view the financial need of one spouse and the other spouse's ability to pay. In so doing, the majority impermissibly shifted the burden in this case from appellant to the appellee. It has long been held that a modification of an award of alimony must be based on a change of circumstances of the parties, *Herman v. Herman*, 335 Ark. 36, 977 S.W.2d 209 (1998), and the burden of showing a change in circumstances is always upon *the party seeking the change in the amount of alimony*. (Emphasis added.) *Weeks v. Wilson*, 95 Ark. App. 88, 234 S.W.3d 333 (2006) (citing *Hass v. Hass*, 80 Ark. App. 408, 97 S.W.3d 424 (2003)). The majority opinion specifically states that, "There is no evidence in the record to suggest that appellee needed alimony *then* or that she needs alimony *now*." (Emphasis added.) Apparently, the majority is attempting to go behind the order to determine whether or not the trial court erred in its first award of alimony. There is no authority for that proposition, and the premise is untenable. *See Taylor, supra* (citing *Lively v. Lively*, 222 Ark. 501, 261 S.W.2d 409 (1953) (holding that the liberality of the original allowance cannot afford grounds for modification)). This last distinct flaw, the shifting of the burden to appellee, demonstrates the majority's disregard of appellate precedent and deference to the trial court.

It is clearly appellant's burden to prove a change in circumstances existed, as he is the one seeking a modification of alimony in this case. It was appellant's burden to prove that appellee no longer needed alimony. He presented nothing to demonstrate need or a lack of need to the trial court. To the extent that the majority's reasoning relies upon that lack of evidence, they should remember that appellee did not have to prove anything, as it was not her burden. The majority's reasoning is structurally unsound. It misstates the holding in the seminal case upon which it bases its decision; it ignores critical testimony relied upon by the trial court in reaching its decision; and, it improperly shifts the burden of proof to appellee.

Accordingly, I dissent.