McKAY PROPERTIES, INC. *v.* ALEXANDER & ASSOCIATES, INC.

CA 97-659                                                     971 S.W.2d 284

Court of Appeals of Arkansas
Division II
Opinion delivered July 1, 1998

*John T. Harmon* and *Howell, Trice & Hope, P.A.*, by: *William H. Trice III*, for appellant.

*Williams & Anderson,* by: *Timothy W. Grooms, John E. Tull III,* and *Katharine R. Cloud,* for appellee.

WENDELL L. GRIFFEN, Judge. McKay Properties, Inc., has appealed the decision of the Pulaski County Chancery Court, Fourth Division, which denied counterclaims asserted by McKay Properties against Alexander & Associates, Inc., arising from provisions of a purchase and sale agreement concerning a residential real estate brokerage business. McKay Properties argues that the chancellor committed reversible error by ruling that all obligations between Randy Alexander and John P. McKay, Jr., the principals of the two companies, had been fully performed and that Alexander's obligation to provide John McKay with life and medical insurance had expired. After conducting a *de novo* review of the record, we find no reversible error and affirm the chancellor's decision.

In 1982, Randy Alexander negotiated to purchase the residential real estate brokerage firm known as McKay and Company from John P. McKay, Jr. An agreement was signed on February 1, 1982, that documented the general terms of the sale, and a "Purchase and Sale Agreement" was executed by McKay and Company, Inc., McKay, and Pine Tree Properties (collectively referred to in the agreement as the "Seller") and Alexander (the "Purchaser") for the sale of the assets of McKay and Company to Alexander on March 6, 1982. Under the agreement, the parties stipulated that Alexander would pay McKay $350,000 according to repayment terms prescribed in the agreement, and that McKay would sell to Alexander the exclusive right to use the McKay and Company trade name for thirty years. Paragraph 3 of the agreement provided for assignment of the McKay and Company trade name or any confusingly similar derivatives thereof for thirty years. The consideration for this assignment was stipulated to be $25,000, and the agreement further provided that Alexander could extend the exclusive use by paying $100 per year thereafter. Paragraph 4 of the agreement provides for a two-year prohibition (from the closing date for the agreement) on McKay being employed by or associated with a residential real estate brokerage firm in Little Rock, with one exception not pertinent to this litigation. Paragraph 10(i) of the agreement provides that Alexander

is to provide life and medical insurance for John McKay, but does not specify the period of time during which the insurance is to be provided. Paragraph 10(i) of the agreement states:

> The Purchaser [Randy Alexander] agrees to provide life insurance to John P. McKay, Jr. in the amount equal to the coverage currently in force and to maintain medical insurance on John P. McKay, Jr. providing coverage substantially similar to the coverage provided by the McKay and Company, Inc. insurance on the date hereof; provided, however, the obligations of the Seller [sic] hereunder to pay for life insurance and medical insurance shall not in any year exceed the sum of $6,000.00 for all such coverage. The parties agree to work diligently to obtain like coverage at as low a cost as possible.

Alexander made the final payment under a promissory note that he made in connection with the purchase and sale agreement in January 1994. Insurance payments on behalf of McKay were then discontinued. In 1995, McKay opened a residential real estate firm using the name McKay Properties. He promoted that firm by using a green and white sign with a pine tree logo similar to the one sold to Alexander under the agreement. Alexander's firm, Alexander & Associates, then sued McKay and McKay Properties, Inc., for breach of contract, unfair competition and trademark infringement, and McKay filed counterclaims against Alexander for breach of contract concerning the insurance agreement mentioned at Paragraph 10(i).

The chancellor held a preliminary injunction hearing on the prayer of Alexander and Associates for injunctive relief to prevent McKay from using a green and white sign with a pine tree logo. A full trial and several other hearings were conducted before the chancellor found that John McKay breached the purchase and sale agreement by using a sign that was "confusingly similar" to that sold to Alexander under the trade name provision of the agreement. The chancellor entered a permanent injunction against John McKay and McKay Properties enjoining them from using any confusingly similar trade name and design to that sold to Alexander, awarded attorney's fees to Alexander & Associates, and denied McKay's counterclaims against Alexander for breach of contract arising from the insurance provision of the agreement, for

tortious interference with a contractual relationship, and for trademark infringement.

■ Appellate review of chancery decisions is *de novo*, and the appellate court does not reverse the findings of a chancellor unless they are clearly against the preponderance of the evidence. *Stewart v. First Commercial Bank*, 59 Ark. App. 47, 953 S.W.2d 592 (1997). Because this appeal involves a contractual dispute, we are obliged to follow the longstanding Arkansas law holding that a contract is to be construed, if possible, by giving meaning to all terms contained in it. *First Nat'l Bank of Crossett v. Griffin*, 310 Ark. 164, 832 S.W.2d 816 (1992).

Although appellant contends that the chancellor erred in ruling that the obligations of the parties in the agreement were fulfilled so that he was not entitled to further payments for insurance, we hold that the chancellor's decision was not clearly erroneous. The March 6, 1982, agreement required Alexander to pay the purchase price of $350,000 by delivery of a promissory note in that amount at closing. The note was satisfied in January 1994. Although appellant argues that the agreement obligated Alexander to pay for insurance on behalf of McKay for thirty years, the time period for initial use of the McKay and Company trade name, nothing in the agreement supports that argument.

■ We also agree with the chancellor that McKay cannot breach the contract with Alexander by using a prohibited trade name and simultaneously claim entitlement to additional payments under the agreement. Whether one proceeds from the maxim that equity regards as done that which ought to be done, or the maxim that he who seeks equity shall do equity, or the maxim providing that he who comes into equity must come with clean hands, the record in this case clearly shows that McKay opened a competing residential real estate firm using a trade name that was confusingly similar to the trade name that he sold to Alexander under their agreement. Under whatever notion of equity one applies, McKay should be precluded from entitlement to payments for insurance benefits after Alexander had satisfied all other purchase obligations when he had worked to undermine the very trade name that he sold Alexander. *See* John Pomeroy, *Equity Jurisprudence* § 363 (5th ed. 1941).

■ We also are not persuaded by appellant's argument that the chancellor erred by not determining the duration for Alexander to pay McKay's insurance benefits pursuant to Paragraph 10(i) of their agreement. Contrary to appellant's argument, the chancellor determined that "since the parties are under no further obligation under the terms of the contract, the provision for the payment of insurance premiums has expired" (*See* Conclusion of Law No. 11 in the Chancellor's November 18, 1996, Order for Permanent Injunction, *infra*). The chancellor's reasoning is consistent, by analogy, with the Uniform Commercial Code. Arkansas Code Annotated section 4-1-204(2) (Repl. 1991) provides that what is a reasonable time for taking any action depends on the nature, purpose, and circumstances of such action. Subsection (3) of that statute provides that an action is "taken seasonably" when it is taken at or within the time agreed or, if no time is agreed, at or within a reasonable time. The parties did not specify a time period during which Alexander was to provide life and medical insurance benefits for McKay, therefore the chancellor was entitled to construe the agreement to require that the obligation to provide those benefits was for a reasonable time. We cannot conclude that the chancellor did not determine the duration of the period during which Alexander would be liable to provide life insurance premiums for McKay when "Conclusion of Law" No. 11 states, in pertinent part:

> Plaintiff [Alexander] is under no further obligation to Defendant John McKay, Jr., for insurance payments. Plaintiff contends that the insurance provision of the contract was only in effect during the period of time that Plaintiff was obligated under the terms of the Note for the Purchase Price in the contract. The note was satisfied in January of 1994, and Plaintiff ceased making insurance payments. There is nothing in the contract to support Plaintiff's argument that the insurance payments were only to be paid during the duration of Plaintiff's obligation on the Note, nor is there anything in the contract to support Defendants' argument that the term of payment for insurance was 30 years, the period for initial use of the Trade Name. There is no provision in this section of the contract regarding time.

> All the obligations of this contract have been fulfilled, including the transfer of real property and tangible assets, the payment of the purchase.price, the expiration of the non-competition peri-

ods, and the entitlement to use of the trade name. *Accordingly, since the parties are under no further obligation under the terms of the contract, the provision for the payment of insurance premiums has expired.* (Emphasis added.)

Although the chancellor did not indicate the precise date when Alexander's obligation to pay the insurance premiums expired, there was no requirement that she do so. The relevant inquiry is whether the chancellor's conclusion comports with a reasonable time for fulfillment of that contractual obligation.

■ It is understandable that McKay would want to ensure that his ability to obtain life and medical insurance would be protected after he gave up his primary income source at McKay and Company. That concern would certainly have been reasonable when one considers that McKay was precluded from working in the residential real estate field for two years under the terms of the purchase and sale agreement. The agreement also prohibited McKay from advertising, publishing or displaying his name or picture in conjunction with any entity engaged in the residential real estate business unless plain and conspicuous reference was made that McKay was exclusively engaged in the commercial real estate business (Paragraph 3(c)). The chancellor concluded that the parties had fulfilled their obligations under the agreement so that Alexander's obligation to provide the life and medical insurance benefits for McKay had expired when Alexander made the final payment on the purchase price in January 1994, twelve years after the parties executed their agreement. We find no basis in the record to hold that twelve years was not a reasonable time. For ten of those years McKay could have engaged in the residential real estate business without violating the non-competition provision of his agreement with Alexander, to include owning his own residential real estate brokerage firm. If McKay and Company had provided for the life and medical insurance benefits during the time that McKay was associated with that firm and McKay had the right to open his own firm as early as two years after closing the sale to Alexander, it is quite reasonable to conclude that McKay had adequate time and opportunity to arrange for life and medical insurance coverage by 1994.

■ We are also unpersuaded by appellant's third argument that McKay is entitled to receive life and medical insurance pay-

ments of up to $6,000 per year for as long as the McKay and Company trade name is used by Alexander, his heirs, or assigns. We have already indicated that the chancellor's conclusion of law on this point is not clearly erroneous. We agree that the purchase and sale agreement is silent as to how long the insurance payments were to continue. Nothing in Paragraph 10(i) supports McKay's assertion, and the remainder of the agreement lends no support to that argument which is tantamount to a claim for payment of life and medical insurance benefits for the balance of McKay's lifetime.

It is true that a contract provision is ambiguous if it is suscep-tible to different interpretations. *Western World Ins. Co. v. Branch*, 332 Ark. 427, 965 S.W.2d 760 (1998). But the chancellor cor-rectly observed that the contract is silent regarding the duration of time for the insurance payments. No ambiguity arises from the parties' failure to specify how long the insurance payments were to be made. Silence concerning time means that no time was speci-fied at all, not that arguably different time periods were contem-plated by the contract. We hold that the chancellor's application of a reasonable time analysis was not clearly erroneous.

Affirmed.

STROUD and CRABTREE, JJ., agree.