2009 Ark. App. 337

**Terry A. HATCH, Appellant,**

v.

**William Paul HATCH, Appellee.**

**No. CA 08–1275.**

Court of Appeals of Arkansas.

April 29, 2009.

James A. McLarty, III, Newport, for appellant.

Ralph Myers, III, McCroy, for appellee.

RITA W. GRUBER, Judge.

Appellant Terry A. Hatch contends that the circuit court erred in denying her claim for a share of alleged retirement benefits that appellee William Paul Hatch, her ex-husband, received from the Arkansas Public Employees Retirement System (APERS) after their 1990 divorce. We affirm the circuit court's decision that these benefits were not subject to division under the parties' property-settlement agreement.

The property-settlement agreement, which was incorporated into the parties' divorce decree, included the following provision:

> The Plaintiff [appellee] agrees that the Defendant [appellant] shall be entitled to ½ of 9/20ths of his pension benefits from the Arkansas Game and Fish Commission, and that upon his retirement from the aforesaid agency he shall deliver over to her ½ of 9/20ths of each pension check which he shall receive from the aforesaid agency.

In April 2008 appellant filed a petition for citation alleging that appellee had secured early retirement status based upon disability in April 2003. She prayed that appellee be directed to appear and show cause why he should not be held in contempt, and that she be awarded her share of the benefits.

After conducting a hearing on the petition, the circuit court ruled that appellee was not in contempt. The court reserved ruling on appellant's entitlement to the challenged benefits, leaving the record open so that the parties could conduct discovery on the issue.[1] At the conclusion of a second hearing, the court ruled that appellant was not entitled to the funds under the property-settlement agreement because they were disability income rather than retirement income. The court's oral findings and conclusions were incorporated into a written order of August 12, 2008, from which the present appeal arises.

At the initial hearing appellee testified that he had not retired. He testified that he nearly broke his back in an on-the-job injury and had not worked as a wildlife officer since December 31, 2001. He stated that he initially drew workers' compensation benefits; used vacation, sick, and catastrophic leave for a year and a half; and after qualifying "for early retirement, namely disability retirement, from Game and Fish," received benefits from February 2004 through May 2008.[2] He said that he never considered the benefits "as retirement," explaining that they were tied to social security, that he was a disabled employee who could not work, and that his retirement age of fifty-six was more than seven years away. He said that he had started his own carpentry business and that in May, the month before the hearing, he drew no state benefit because his monthly income had exceeded the allow-

---

1. A colloquy between the court and the parties' attorneys established that APERS administered the plan for Game and Fish employees.

2. Appellee testified that these benefits were retroactive to April 2003.

able amount of $940. He said he understood that the disability was totally separate from retirement because it was not based on his age, explaining that disability benefits were paid by the state when an injured employee could not work and that "the retirement amount is a different amount." He testified that his state benefits had not vested at the time of the parties' divorce because he did not have ten years' service, and he had known at that time that appellant would not have been entitled to any of his retirement.

Evidence before the court at the second hearing included two letters from APERS and further testimony by appellee. The first letter stated:

In reference to your inquiry about Mr. Hatch and his status with this Retirement System, please be advised that this is a defined benefit plan meaning that retirement benefits are based on a defined formula and determined by salary, service, age and benefit multipliers. Benefits based on disability are, in our definition, retirement benefits, payable to the member monthly for his/her lifetime and based on the same formulas as any other benefit paid by APERS. The exception is that if the member meets the required criteria for disability, there is no age penalty applied.

. . . .

Because Mr. Hatch was not vested for any type of monthly benefit when his marriage ended, this system would not honor a QDRO and would not pay an alternate any part of his monthly benefit. If he is ordered by the court to provide payment to his ex-wife, he will be responsible for making those payments.

The second letter from APERS showed the effective date of appellee's "retirement due to disability" as April 1, 2003, and stated that appellee was paid "$72,804.96

in disability benefits" from April 2003 through May 2008, when benefits were suspended.

Appellee's testimony at the second hearing expounded upon his previous testimony. He said that his accident occurred on river rocks when a rolling boulder "about disintegrated two discs," and that in January 2002 he underwent back surgery. He testified that he did not draw state disability until he was found disabled for purposes of social security, which "is what the state bases their disability on." He said that state retirement and disability had different sets of rules and regulations, explaining that disability stipulates "[y]ou cannot work and have to go for medical reviews" but that there are no stipulations "when you retire with your years of service and you have met the age requirement."

The court pronounced its ruling in open court, finding that the benefits at issue were in the nature of disability income. The court observed that although APERS called the funds retirement income, the state had different sets of rules for retirement and disability as follows:

If this was truly retirement income that was vested in him that he has a right to draw on, then it would not matter how much money he made, and they would not take it away from him. It is completely tied to his Social Security Disability Claim. They did not even give it to him until he was determined to be disabled. They call it . . . in their vernacular[,] retirement, but when they set it up with a different set of rules that says that if you don't reach a certain age or time in service that it is conditioned that it must be by, under a disability of some sort.

From a *de facto* standpoint, that is what they have done. They have made two different sets of eligibility for this payment that they call retirement, but

that is in fact not retirement since if it were, he would still be getting it.

The court clarified that "retirement would be reached under the decree," at the time that the plan should pay benefits that are irrevocable, "in other words, that are in a sense vested retirement benefits." Noting that there was no testimony about when that would occur, the court commented that presumably, at some point, appellee would be entitled to apply for benefits of a permanent nature not tied to whether he could work. The court reiterated that until that time, appellant was not entitled to the disability pay that was the subject of the hearing.

Appellant presents four points in support of her contention that the circuit court erred in failing to award her part of appellee's retirement under the property-settlement agreement. She asserts that 1) the property-settlement agreement stated that she was entitled to "any retirement payments," 2) the circuit court was without authority to modify the agreement, 3) the undisputed evidence showed that appellee received retirement benefits, and 4) Arkansas law supports a finding that retirement benefits are marital property even if due to disability.

Appellant cites no law or authority to support the conclusory argument she first raises, that the property-settlement agreement stated she "was entitled to any retirement benefits." Her second argument, that the circuit court was without authority to modify the agreement, was not made to the trial court. It has long been held that the appellate courts will not address arguments unless they are sufficiently developed and include citation to authority. *Gatzke v. Weiss,* 375 Ark. 207, 289 S.W.3d 455 (2008). It is also well settled that arguments made for the first time on appeal will not be considered.

*City of Fort Smith v. McCutchen,* 372 Ark. 541, 279 S.W.3d 78 (2008).

Appellant's third argument is that "the undisputed evidence" showed that appellee's APERS payments were retirement benefits. She notes that APERS defined "benefits based on disability" as retirement benefits, and she asserts that appellee clearly anticipated that they would be subject to division under the property-settlement agreement. And again, as in her second argument not raised below, she argues that the circuit court was without jurisdiction to modify the agreement.

When a contract provision is susceptible to two reasonable interpretations, its meaning is a question of fact for the trial court to determine. *Hickman v. Kralicek Realty & Construction Co.,* 84 Ark.App. 61, 129 S.W.3d 317 (2003); *McKay Properties, Inc. v. Alexander & Associates,* 63 Ark.App. 24, 971 S.W.2d 284 (1998). Decisions sounding in equity are reviewed de novo on appeal and are not reversed unless we find that the circuit court's decision is clearly erroneous. *Abbott v. Abbott,* 79 Ark.App. 413, 90 S.W.3d 10 (2002). Applying this standard, we can find no fault with the circuit court's interpretation.

Here, the parties disagreed whether the payments made to appellee as a result of his disability constituted "retirement pay" under the settlement agreement. Appellant argued to the circuit court that this was "an issue of law of the interpretation of the property settlement agreement." Reiterating his testimony that he had no idea that his disability benefits were retirement benefits, he argued that it would not be equitable to hold him liable under the decree.

The settlement agreement stated that appellant was entitled to a share of appellee's pension benefits upon his retirement

from Game and Fish. Appellee explained in his testimony, which the circuit court clearly found credible, that the benefits he had received were unlike retirement benefits because they were not tied to years of service, were dependent upon a determination of disability for social-security purposes, and indeed had ceased after he achieved an income threshold. He further testified that he had never considered these benefits to be retirement benefits. The APERS letter and appellee both stated that the benefits he received after being declared disabled were not dependent upon age. The circuit court determined that the payments were in the nature of disability rather than retirement benefits, noting that they did not depend upon age or time in service. We find no error in the court's interpretation of "retirement benefits" in the settlement agreement.

We also believe that it was reasonable for the trial court to conclude that appellant's entitlement to retirement benefits as contemplated under the decree would occur when appellee was paid benefits that were vested, irrevocable, or permanent in nature instead of tied to whether or not he could work. We cannot say that its finding is clearly erroneous.

■ Appellant's final argument is that Arkansas law supports a finding that retirement benefits are marital property even if due to disability. She asserts that the circuit court's ruling was contrary to public policy and that the money appellee received, whether disability ⌊₈payments or a retirement benefit, was subject to division as marital property. Again, she asserts that the court's ruling was contrary to the parties' agreement.

Our marital property statute requires that all property acquired subsequent to the marriage be divided, with certain exceptions not applicable here. *Burns v. Burns*, 312 Ark. 61, 847 S.W.2d 23 (1993).

Retirement or pension benefits that have not vested at all have been held, in non-community property states with such statutes, not to be property subject to division or direct consideration in making such equitable property divisions. *Id.* To the extent a party acquires an enforceable right during the marriage, the party acquires marital property. *See Bunt v. Bunt,* 294 Ark. 507, 744 S.W.2d 718 (1988) (stating that to the extent Mr. Bunt acquired an enforceable right during the marriage to recover for personal injury, he acquired marital property).

Through the property-settlement agreement in this case, appellee agreed to give appellant half of a 9/20 interest in his retirement benefits when he received them. However, he was not vested in benefits of any type from Game and Fish prior to the divorce and clearly had not acquired an enforceable right to disability payments. The circuit court interpreted the contract and found that the word "retirement" as used in the agreement did not include disability payments he had received eleven years after the divorce. We find no clear error in this ruling.

Affirmed.

PITTMAN and ROBBINS, JJ., agree.