SLIP OPINION          Cite as 2016 Ark. App. 272



# ARKANSAS COURT OF APPEALS

DIVISION I
**No.** CV–15–231

| | | |
|---|---|---|
| | | **Opinion Delivered**  MAY 18, 2016 |
| OWEN KELLY | | APPEAL FROM THE WASHINGTON |
| | APPELLANT | COUNTY CIRCUIT COURT |
| | | [NO. DR–13–2217] |
| V. | | |
| | | HONORABLE JOANNA TAYLOR, |
| | | JUDGE |
| MANDY KELLY | | |
| | APPELLEE | REVERSED AND REMANDED FOR |
| | | ENTRY OF AN ORDER |
| | | CONSISTENT WITH THIS OPINION |

## DAVID M. GLOVER, Judge

This is the second time the Kelly divorce has been before our court. In *Kelly v. Kelly*, 2015 Ark. App. 147, we dismissed the appeal for lack of finality. The Arkansas Supreme Court accepted the case on a petition for review, addressed only the finality issue, and remanded the case to our court to decide the merits. *Kelly v. Kelly*, 2016 Ark. 72, ___ S.W.3d ___.

Thus, the remaining issue for decision is whether the trial court abused its discretion in setting the amount of alimony and by directing Owen Kelly's alimony obligation to automatically increase as child-support payments decreased to ensure that Mandy Kelly continued to receive the total support she requested in the amount of $16,659 per month. We hold that the trial court abused its discretion both in its determination of the initial award

of alimony and in the provision of an "escalator clause" for alimony each time child support was automatically reduced. We reverse and remand for entry of an order consistent with this opinion.

Owen and Mandy were married on April 24, 1994; they were divorced by decree entered on March 24, 2014, in the Washington County Circuit Court. Two children were born of the marriage, K.G.K. in November 1999, and H.K. in October 2002. Mandy was awarded custody of the children. The trial court determined Mandy needed $16,659 per month for expenses. Owen was ordered to pay $7,528 in child support and $9,131 in alimony monthly beginning on April 1, 2014. We note that Owen further agreed to pay $1,000 per month outside of his child-support obligation for H.K. to attend the New School, and that tuition will increase as H.K. advances in grade.

Of particular significance to this appeal, the divorce decree provided that when Owen's child support is reduced to $5,366 per month (when K.G.K. attains the age of majority), the $9,131 per month alimony amount would automatically increase to $11,293 per month, thereby keeping the total amount of support Owen was to pay to Mandy at $16,659. The decree further provided that when H.K. attained majority and child support ceased, Owen's alimony obligation to Mandy would increase to the full $16,659 sum.

On appeal, divorce cases are reviewed de novo. *Webb v. Webb*, 2014 Ark. App. 697, 450 S.W.3d 265. An award of alimony is not mandatory, but is solely within the circuit court's discretion, *Mitchell v. Mitchell*, 61 Ark. App. 88, 964 S.W.2d 411 (1998); we will not reverse absent an abuse of that discretion. *Cole v. Cole*, 89 Ark. App. 134, 201 S.W.3d 21

SLIP OPINION

SLIP OPINION

(2005). An abuse of discretion means discretion improvidently exercised, i.e., exercised thoughtlessly and without due consideration. *Foster v. Foster*, 2015 Ark. App. 530, 472 S.W.3d 151. However, if alimony is awarded, it should be set at an amount that is reasonable under the circumstances. *Mitchell*, *supra*.

The division of marital property and an award of alimony are complementary devices that may be utilized by the circuit court to make the dissolution of a marriage financially equitable. *Webb*, *supra*. The purpose of alimony is to rectify the economic imbalances in earning power and standard of living in light of the particular facts of each case. *Kuchmas v. Kuchmas*, 368 Ark. 43, 243 S.W.3d 270 (2006). The primary factors that a court should consider in awarding alimony are the financial need of one spouse and the other spouse's ability to pay. *Gilliam v. Gilliam*, 2010 Ark. App. 137, 374 S.W.3d 108. The circuit court may also consider other factors, including the couple's past standard of living, the earning capacity of each spouse, the resources and assets of each party, and the duration of the marriage. *Johnson v. Cotton-Johnson*, 88 Ark. App. 67, 194 S.W.3d 806 (2004). We adhere to no mathematical formula or bright-line rule in awarding alimony. *Valetutti v. Valetutti*, 95 Ark. App. 83, 234 S.W.3d 338 (2006).

Owen is and has been an orthopaedic surgeon since 2003. He testified, and his affidavit of financial means indicated, that his gross monthly salary was $35,000, but his *net* monthly take-home pay was $19,975 for the first three months of the year (when social-security taxes were taken out of his paycheck) and $20,170 for the remainder of the year. He showed monthly expenses of $10,665, which included mortgage payments on both the marital home

and the residence he now occupies. When the parties married in 1994, Owen was preparing to go to medical school, and Mandy had completed two or three years of college. Early in the marriage, Mandy worked at Sam's Club in the marketing department and then for Metropolitan National Bank as a vault teller making a salary in the low $30,000 range. After K.G.K.'s birth, the parties agreed that Mandy would not continue to work outside the home.

Within the divorce decree, by prior agreement of the parties, Mandy was awarded $367,000 as an equal distribution of marital property, as well as all personal property currently in her possession (with the exception of two 12-piece place settings of silver from Owen's family that were awarded to Owen) and any personal property located in the former marital residence. Mandy was also awarded $12,220 as her marital share of two businesses: Owen's medical practice and Leasing Services of Arkansas. Mandy testified during the divorce hearing she had about $350,000 of the $367,000 division remaining; she further testified she would rather not spend that money but instead get alimony from Owen because that was all the money she had. She testified she had not looked into obtaining any type of employment from which to derive income. She acknowledged the marital home was on the market; Owen was paying the mortgages on it; the divorce decree ordered Owen to continue making the mortgage payments until it sold; and the parties would divide equally the net proceeds from the sale of the house after the payment of the mortgages and other costs.

On her affidavit of financial means, Mandy calculated that she needed $16,659 per month for expenses. Specifically, Mandy listed monthly expenses as follows:

- $2,400        Rent/house payment
- $350        Gas & electricity

SLIP OPINION

- $43   Water
- $150   Telephone
- $1,382   Food
- $1,764   Clothing
- $350   Laundry & cleaning
- $2,000   Anticipated taxes
- $600   Car payment
- $125   Medical
- $1,000   Entertainment
- $150   School
- $50   Drugs
- $48   Life insurance
- $750   Health insurance
- $152   Auto insurance
- $250   Fire insurance
- $400   Transportation
- $225   Lawn care
- $2,500   Vacations
- $175   Pets
- $1,000   Gifts
- $175   Cable/internet
- $175   Gym membership
- $450   Counseling

Without discussion, the trial court awarded Mandy every penny she requested.

Mandy testified the $2,000 per month "anticipated taxes" she requested was to be used to pay taxes on the alimony she was requesting Owen to pay her. She conceded it was just an estimate; she had no basis for that amount. Our law is clear that there is simply no basis for such an award. Alimony is generally taxable income to the recipient and deductible to the payor. *Wadley v. Wadley*, 2012 Ark. App. 208, 395 S.W.3d 411; *see also* Ark. Code Ann. §§ 26-51-404 and −417 (Repl. 2012). The trial court abused its discretion by requiring Owen to pay the taxes on the alimony award to Mandy.

The vast majority of Mandy's above-requested expenses are nonexistent, overstated, or excessive. Mandy claimed $225 per month for lawn care, but it was her testimony that lawn care was provided for by her landlord. She allocated $250 per month for fire insurance but testified she did not pay fire insurance. She claimed $750 per month for health insurance but admitted under cross-examination her health insurance would cost at most $463 per month. We find these items—her $1,000 per month for gifts, $1,000 per month for entertainment and $2,500 per month for vacations—were excessive. Mandy conceded that her monthly figures for food ($1,382), clothing ($1,764), and vacations ($2,500) were based on a family of four, not her current family of three further requiring these figures to be reduced. Our review of the record before the circuit court recognizes the circuit court awarded the above $16,659 total support from Owen's net monthly take-home pay of $19,975–$20,170. Though we could modify alimony and set an amount that is reasonable under the circumstances, *see Spears v. Spears*, 2013 Ark. App. 535 (40-year-old stay-at-home wife with a year of college education showed $9,455 of expenses on affidavit of financial means; circuit court ordered doctor husband to pay $4,000 per month in alimony; court of appeals reduced alimony to $2,500 per month), we are remanding to the circuit court to do so in compliance with our findings from our de novo review of the record created in this case before the circuit court.

Owen further argues that the automatic "escalator clause" increasing his alimony payments to Mandy to maintain the level of total financial support he provided when his

children were still living with Mandy is an abuse of discretion. We agree. Modification of an alimony award must be based on a significant and material change in the parties' circumstances, and the burden of showing such a change in circumstances is always on the party seeking the modification. *Hix v. Hix*, 2015 Ark. App. 199, 458 S.W.3d 743; *see also Weeks v. Wilson*, 95 Ark. App. 88, 234 S.W.3d 333 (2006).

On this point, Mandy argues the recent case of *Jones v. Jones*, 2014 Ark. App. 614, 447 S.W.3d 599, is directly on point and requires that our court affirm the trial court's automatic increases of alimony. We disagree that *Jones* mandates this automatic increase of alimony be affirmed; the facts in this case are distinguishable from those in *Jones*. In *Jones*, the parties had no savings or real property, and the trial court determined that Mrs. Jones was working at her highest and best use of her talents and resources. In *Jones*, Mr. Jones did not dispute that Mrs. Jones would be unable to meet her basic monthly needs of $3,388 on her $1,690 monthly income without assistance from him.

In *Jones*, we held it was a certainty that Mrs. Jones would need additional alimony as child support abated; that is not the case here. Mandy was awarded a large property settlement in the divorce, and she is a 44-year-old woman with no physical health problems. While the trial court found that she had no marketable skills and was not currently able to hold a job, Dr. Brad Diner, a psychiatrist hired by her own counsel to evaluate her, testified that, while it could be difficult for Mandy to hold a job at the moment, it would be helpful for her to find work and that she should be able to do so in three or four years. Dr. Diner said that

would give her time to rehabilitate herself and retrain and educate herself.

We have established from the record that there is no need for $16,659 in monthly expenses, and it is beyond speculation that Mandy will not need almost $17,000 per month to meet her needs when the children are no longer living with her (especially given that many of her expenses are nonexistent, are speculative, are excessive, or have been based on the children's needs). We hold that it was an abuse of discretion for the trial court to automatically increase Mandy's alimony as child support abates. The circuit court's approach, applying the "escalator clause" where no justification exists, ignores the fact that modifications in alimony require proof of a change in circumstances, and the burden of proof is on the party seeking to modify the alimony. *Hix*, *supra*. Without financial need established, by employing the use of the "escalator clause" to increase alimony as child support decreases and then abates, the circuit court has relieved Mandy of her burden to prove that such an increase is necessary and justified. It has disincentivized her, contrary to her psychiatrist's opinion, to ever seek employment. If Mandy needs additional support as child support abates, she is free to return to court to seek an increase in alimony. Likewise, if Owen's financial situation changes, he is also free to return to court to seek a decrease in alimony.

Reversed and remanded for entry of an order consistent with this opinion.

GRUBER and BROWN, JJ., agree.

*Everett, Wales & Comstock*, by: *John C. Everett*; and *Smith, Cohen & Horan, PLC*, by: *Matthew T. Horan*, for appellant.

*Clark Law Firm PLLC*, by: *Suzanne G. Clark*, for appellee.