Michael filed a motion to reconsider on December 7, 2016. In it he argued that the circuit court failed to consider or make findings regarding Rene's financial need and that the circuit court impermissibly automatically escalated alimony at the end of four years. Michael also appealed the circuit court's division of the rights to the stock awards as marital property. He argued that Brady has the right to unilaterally deny Michael these benefits; thus, he does not have enforceable contract rights to the stock awards.
The court did not rule on the motion to reconsider, and it was deemed denied. Michael filed a timely notice of appeal.
II. Issues on Appeal
A. Alimony Award
1. Discretion to award alimony
For his first point on appeal, Michael argues that the circuit court abused its discretion when it awarded Rene alimony despite its finding that she has no financial need for alimony. We disagree with Michael's characterization of the circuit court's finding regarding Rene's financial need, and we find no error in the circuit court's exercise of its discretion.
On appeal, divorce cases are reviewed de novo. Webb v. Webb , 2014 Ark. App. 697, 450 S.W.3d 265. An award of alimony is not mandatory but is solely within the circuit court's discretion, Mitchell v. Mitchell , 61 Ark. App. 88, 964 S.W.2d 411 (1998). We will not reverse absent an abuse of that discretion. Cole v. Cole , 89 Ark. App. 134, 201 S.W.3d 21 (2005). An abuse of discretion means discretion improvidently exercised, i.e., exercised thoughtlessly and without due consideration. Foster v. Foster , 2015 Ark. App. 530, 472 S.W.3d 151. The circuit court is in the best position to view the needs of the parties in connection with an alimony award. Smithson v. Smithson , 2014 Ark. App. 340, at 2, 436 S.W.3d 491, 493. If alimony is awarded, it should be set at an amount that is reasonable under the circumstances. Mitchell, supra.
The division of marital property and an award of alimony are complementary devices that may be utilized by the circuit court to make the dissolution of a marriage financially equitable. Webb, supra. The purpose of alimony is to rectify the economic imbalances in earning power and standard of living in light of the particular facts of each case. Kuchmas v. Kuchmas , 368 Ark. 43, 243 S.W.3d 270 (2006). The primary factors that a court *217 should consider in awarding alimony are the financial need of one spouse and the other spouse's ability to pay. Gilliam v. Gilliam , 2010 Ark. App. 137, 374 S.W.3d 108. The circuit court may also consider other factors, including the couple's past standard of living, the earning capacity of each spouse, the resources and assets of each party, and the duration of the marriage. Johnson v. Cotton-Johnson , 88 Ark. App. 67, 194 S.W.3d 806 (2004). We adhere to no mathematical formula or bright-line rule in awarding alimony. Valetutti v. Valetutti , 95 Ark. App. 83, 234 S.W.3d 338 (2006). The need for flexibility outweighs the need for relative certainty. Id.
The circuit court's detailed analysis of the alimony issue demonstrates its careful consideration of the evidence. To understand this point on appeal and the following point, it is helpful to set out the court's entire discussion of the alimony issue. The circuit court concluded the following:
[W]hile it doesn't disagree with the Defendant that you could easily look at this as a case where, yes, the Defendant has the ability, but the Plaintiff doesn't have the need. And the Court would say that it is looking at it as an alimony case because there's only four years left for a substantial amount of child support. The Court finds that the appropriate amount of alimony is $3500 per month; however, the Court charges the Plaintiff with $1000 a month as income she could earn on her own. That's a very small amount of money. On the other hand, with two school-age children with which the Plaintiff is heavily involved and the Defendant who is only able to be here some, only working part-time right now is feasible for the Plaintiff. The Court does not tell the Plaintiff to work part-time, but thinks she could obtain work without any harm to the children, obtaining work would perhaps benefit the children and the Plaintiff, and such work could be increased as the children leave home. Therefore, the Defendant shall pay spousal support of Two Thousand Five Hundred Dollars ($2500) per month directly to the Plaintiff. Such award is subject to review in four years.
The Court agrees that alimony may need to be stepped up in the future, but it's four years until the Plaintiff loses child support, and the Court is just not going to try and predict that far out. If in four years the Plaintiff wants to come in and
show she needs more, and he's still earning at the same rate, and the Plaintiff is making some reasonable efforts to gain employment or prepare herself for employment, the Court can look at it at that point, but the Court is not going to make those kind of assumptions that far ahead. The Court knows that's not a lot of alimony, but in most cases it would be a huge amount of alimony. It's not a lot of alimony in this case. And the reason for that is the Plaintiff is getting a large amount of child support, the court believes, after looking at the Defendant's exhibits, the Plaintiff has the ability to draw a substantial sum of money in excess of $85,000. The Court appreciates the basic assessment that the reason the returns of the Parties have been relatively low up to now is that so much of the investments have been in savings accounts. The Court is cognizant it is very difficult today to receive a good return on a completely safe investment. The Court doesn't know how people who say they live off CDs do it, because, you know, they are not interested in paying you any sum of money that is even worth your while, really to put your money there. I mean, it's just-it's pitiful. But the Court does believe that there are some investment vehicles that carry some risk, as all things do, but that *218 would provide the Plaintiff income in excess of what she's getting now. So all those things went into the Court's calculation that alimony should be kept at what, for this case, is a low level.
Michael's assertion that the circuit court found that Rene has no need for alimony is not borne out by our review of the order. The court stated that "you could easily look at this as a case where, yes, the Defendant has the ability, but the Plaintiff doesn't have the need." The circuit court then rejected that view and explained that it had considered the issue of alimony in light of the upcoming cessation of child-support payments, Rene's involvement with the children's day-to-day lives and Michael's work-related absence from the daily routine, and the relatively low return on the investments from which Rene garners income. The circuit court also specifically found that Rene is able to earn $1000 a month from part-time employment. Accordingly, the court reduced the $3500 amount in alimony it would have awarded by $1000 to $2500. The circuit court explains that the
"low" amount of alimony reflects of the large amount of child support Michael is responsible for each month.
Michael argues that the court erred in awarding alimony and compares the instant case to Cole v. Cole , 89 Ark. App. 134, 201 S.W.3d 21 (2005). The facts in Cole are similar to the case before us. At the time of the parties' divorce, Cindy Cole was forty-nine years old, in good health, had been a stay-at-home parent for all but two years of the marriage, and the Coles' minor child would soon graduate from high school. Cindy, like Rene, had been awarded various substantial financial assets in the divorce. Unlike Rene, Cindy had completed her college degree, and she held a real estate license. In Cole , our court held that the circuit court had considered the proper factors (Cindy's lack of financial need, her resources and assets, and her earning capacity) in deciding that she had not demonstrated a need for permanent alimony; thus, there was no abuse of discretion. However, the important similarity between Cole and the instant case is the circuit court's thoughtful exercise of its discretion. We recently held in Trucks v. Trucks , 2015 Ark. App. 189, at 5, 459 S.W.3d 312, 316,
Although the facts of this case would arguably support the denial of an award of alimony if that had occurred, it is not our duty under our standard of review to simply substitute our judgment for that of the circuit court, which was in a far better position to judge the credibility of the witnesses. It is instead our duty to determine if the circuit court abused its discretion in making its findings regarding the award of alimony.
In both Cole and the instant case, the circuit court clearly considered the facts, testimony, and evidence and thoughtfully employed its discretion.
Michael also argues that the circuit court abused its discretion by improperly evaluating Rene's monthly expenses. Michael argues that the instant case is "just like" Kelly v. Kelly , 2016 Ark. App. 272, 496 S.W.3d 391,[1] in which our court held that "[w]ithout discussion, the trial court awarded Mandy every penny she requested[.]" In Kelly our court held that the circuit court had abused its discretion by ordering alimony without seeming to consider the following facts in evidence:
*219 The vast majority of Mandy's above-requested expenses are nonexistent, overstated, or excessive. Mandy claimed $225 per month for lawn care, but it was her testimony that lawn care was provided for by her landlord. She allocated $250 per month for fire insurance but testified she did not pay fire insurance. She claimed $750 per month for health insurance but admitted under cross-examination her health insurance would cost at most $463 per month. We find these items-her $1,000 per month for gifts, $1,000 per month for entertainment and $2,500 per month for vacations-were excessive. Mandy conceded that her monthly figures for food ($1,382), clothing ($1,764), and vacations ($2,500) were based on a family of four, not her current family of three further requiring these figures to be reduced.
Our court remanded the case and ordered the circuit court to reduce the award of alimony to one that is reasonable under the circumstances set forth in the record. By contrast, the circuit court in the instant case awarded a combined amount of alimony and child support of $11,600, which is around $1000 and $8000 less than Rene's two household-expense estimates of $12,995 and $19,946.25. Michael asserts that Rene overestimated her monthly expenses, and he testified that he estimates that the household expenses are around $7500 a month. Michael urges this court to reweigh the evidence in his favor; however, our court defers to the superior position of the circuit court to judge the credibility of witnesses, and we cannot say that in light of the testimony and evidence the circuit court awarded an unreasonable amount of alimony under the circumstances.
The circuit court engaged in a careful analysis weighing the relative financial positions of the parties, Rene's role as primary caregiver, her improved ability to find employment or further her education when the children are in college, both parties' affidavits and testimony regarding household expenses, and the amount of child support awarded. The circuit court did not exercise its discretion thoughtlessly, improvidently, or without due consideration, and we affirm.
2. Escalator clause
Michael argues that the circuit court's finding that the issue of alimony may be revisited in four years constitutes an "escalator clause." Michael mischaracterizes the circuit court's decision.
Michael cites Kelly , supra , in support of his argument that the circuit court abused its discretion by automatically increasing alimony payments in four years when child-support payments cease. In Kelly , our court held that the circuit court erred when it directed that alimony automatically increases as child support abates. We held that
[t]he circuit court's approach, applying the "escalator clause" where no justification exists, ignores the fact that modifications in alimony require proof of a change in circumstances, and the burden of proof is on the party seeking to modify the alimony. Without financial need established, by employing the use of the "escalator clause" to increase alimony as child support decreases and then abates, the circuit
court has relieved Mandy of her burden to prove that such an increase is necessary and justified.
Kelly , 2016 Ark. App. 272, at 8, 496 S.W.3d 391, 395-96.
By contrast, in the instant case the circuit court did not order that alimony will automatically increase when child-support payments cease. In fact, the circuit court explicitly states that in four years, when child support abates, Rene may petition the court to review the issue of alimony *220 based on the facts at that time. The court's order is in line with Arkansas Code Annotated section 9-12-312(a)(7), which provides that if a material change in the parties' circumstances occurs-here, the cessation of child support-then either party may petition for review of the order awarding alimony. Modification of an alimony award must be based on a significant and material change in the parties' circumstances, and the burden of showing such a change in circumstances is always on the party seeking the modification. Jones v. Jones , 2014 Ark. App. 614, 447 S.W.3d 599. If Rene chooses to petition the court for an increase in alimony, it will be her burden to prove that the increase is justified, and the circuit court's order in no way eliminates that requirement. Such a requirement may come at any time circumstances warrant. We find no error, and on this point we affirm.
3. The divisibility of the stock options
Michael makes several interrelated arguments regarding the divisibility of the stock options. First, he argues that he has no enforceable right to the awards because his rights are subject to Brady's restrictive policies, such as claw back and the right to defer, amend, modify, or terminate the agreement, and because his right to the stock options depends on his continued employment; thus, the awards are not vested and not divisible marital property. Second, Michael asserts that at the time of the divorce, he had no "current, fully distributive interest" in the awards, which he argues is required for the court to find that he has acquired an enforceable right to the awards. Last, Michael points out that Rene did not provide evidence of the fair market value of the stocks; therefore, the circuit court erred by finding that a speculative future interest is distributable. We find no error in the circuit court's findings, and we affirm.
This court reviews division-of-marital-property cases de novo. Sanders v. Passmore , 2016 Ark. App. 370, at 7, 499 S.W.3d 237, 243. With respect to the division of property in a divorce case, we review the circuit court's findings of fact and affirm them unless they are clearly erroneous or against the preponderance of the evidence. Id. A finding is clearly erroneous when the reviewing court, on the entire evidence, is left with the definite and firm conviction that a mistake has been committed. Id. In order to demonstrate that the circuit court's ruling was erroneous, an appellant must show that the circuit court abused its discretion by making a decision that was arbitrary or groundless. Id.
First, we address whether the circuit court erred by finding that the awards are divisible marital property based on its conclusion that Michael's interest in the stock awards had vested before the divorce. As stated above, Michael asserts that his interest is subject to Brady's restrictive company policies and his continued employment; thus, at the time of the divorce he had no "current, fully distributive interest" in the awards.
The circuit court set forth its reasons for finding that Michael has an enforceable right to the stock options:
Under the terms of the award, the Defendant will receive stock (or options) if he still works for the employer at the specified date. Should he die before that date, his estate will receive that award. The Day court defines benefits as vested once they 'cannot be unilaterally terminated by an employer without also terminating the employment relationship.' Therefore, I believe that the awards made during marriage are, at least in part, marital. I say in part because the grants are intended as payment for work already done and as incentive for *221 continued employment. Only the portion of the awards intended to compensate for past performance should be considered marital. It is difficult to determine how to allocate the awards between payment for past performance and incentive for future employment, but I think the allocation I announced at trial, 80% of awards exercisable in 2016, 40% of awards exercisable in 2017, and none of the awards exercisable in later years, is appropriate.
Michael cites Burns v. Burns , 312 Ark. 61, 847 S.W.2d 23 (1993), in support of his argument that he had no enforceable right to the stock awards. In Burns , our supreme court held that "nonvested military retirement benefits to which the serviceman or servicewoman may become entitled in the future are not property." Id. at 64, 847 S.W.2d 23, 26. Burns is distinguishable from the instant case. In Burns , the husband would acquire the right to the retirement fund only if he continued to serve five more years after the parties' divorce. By contrast, Michael acquired the right to the stock options as part of an award-and-incentive plan offered to him upon his employment with Brady. In support of its finding that Michael has a vested interest in the options, the circuit court points out that if Michael dies, the stock options will become a part of his estate. In Burns , the husband's rights were contingent on his continued service for five years.
Michael also asserts that this case is analogous to Hatch v. Hatch , 2009 Ark. App. 337, 308 S.W.3d 174, in which our court held that the payments made to the husband as a result of his disability do not constitute "retirement pay" under the parties' property-settlement agreement, and the disability benefits the husband received after the parties' divorce are not subject to division as marital property. Our court held that "appellant's entitlement to retirement benefits as contemplated under the decree would occur when appellee was paid benefits that were vested, irrevocable, or permanent in nature instead of tied to whether or not he could work." Hatch is distinguishable from the instant case. In Hatch , we held that the husband's potential disability payments are nonmarital property because he had not yet acquired the right to them at the time of the divorce. As we stated above, Michael acquired the right to the stock options when he began employment with Brady and accepted and contracted for those rights.
Michael also argues that the stock awards are not marital property because they were not fully distributable at the time of the divorce and cites Hackett v. Hackett , 278 Ark. 82, 84, 643 S.W.2d 560, 652 (1982), to support his argument. In Hackett , our supreme court held that, "[t]here is no evidence in this case Mr. Hackett had a vested interest in the capital account with Southwestern Life Insurance Company that was fully distributive upon the date of the Hackett's divorce"; thus, the wife was not entitled to half of the account. It is important to note that Hackett was decided before Day v. Day , 281 Ark. 261, 663 S.W.2d 719 (1984), in which our supreme court expanded the definition of marital property. In Day , the Court held that the husband's interest in his retirement plan was vested, marital property subject to allocation because it could not be diminished by his employer, and his interest was not dependent on his continued employment. In the instant case, the stock awards were granted to Michael beginning in 2014, subject to a restrictive period during which Michael's right to the stock awards was forfeitable. According to the restricted stock-unit agreement, if Brady terminates Michael's employment (without cause) or if he dies or is disabled before the end of the restrictive period, the restricted stock units will become fully *222 vested. The nonqualified stock-option agreement sets forth that after one year's employment, if Michael is terminated not for cause, he has 90 days to exercise his option. Furthermore, the agreement sets forth that if he dies, is disabled such that he cannot work, or is terminated because of retirement after age 65, he immediately vests. The circuit court correctly noted that even Michael's death would not affect his right to his stock award, and thus, Day is applicable here.
Decades later, our supreme court cited Hackett in Pelts v. Pelts , 2017 Ark. 98, at 3, 514 S.W.3d 455, 456. In Pelts our supreme court addressed the issue of when an active-duty retirement account is vested and therefore divisible marital property. In Pelts , the husband had two retirement accounts-a reserve retirement account that the parties agreed was vested and an active-duty account that required Pelts to continue to serve for several more years to acquire a right to it. The Arkansas Supreme Court held that "[w]hether a retirement interest is vested hinges on several factors, including whether the benefit 'cannot be diminished by the [employer] and is not dependent upon ... continued employment.' We have also asked whether the interest was 'fully distributive upon the date of the ... divorce.' See Hackett v. Hackett , 278 Ark. 82, 84, 643 S.W.2d 560, 562 (1982)." In Pelts , our supreme court noted that if the husband opted to end his military service immediately, he would never vest in that particular retirement plan, and he would receive no share of the retirement payments. Our supreme court held that
Gregory's vested property interest in the reserve retirement system at the time of his divorce is distinct from his potential future interest in active-duty payments. The parties do not contest that if Gregory opted to leave the military immediately, he would receive no share of the active-duty retirement payments that might otherwise begin a decade before his anticipated reserve retirement. An interest that is contingent on continued employment is too speculative to be vested and subject to division.
The instant case is distinguishable from both Hackett and Pelts . First, though our supreme court held in Pelts that whether an interest is distributable could be evidence that the interest had vested, its holding is particular to the facts of that case and not a reinstatement of that requirement. Second, unlike Pelts , in which appellant must continue to serve to acquire his right to the retirement account, Brady conferred the right to the stock options when Michael began employment and entered into the agreements.
The instant case is analogous to McDermott v. McDermott , 336 Ark. 557, 565, 986 S.W.2d 843, 847 (1999), in which our supreme court held that attorney's fees earned pursuant to a contingency-fee contract made during the marriage are marital property even though the fees would not be collected until sometime in the future after the parties' divorce. In McDermott , the husband's contingency contracts were created during the marriage, and some of the cases covered by those contracts were tried during the marriage; therefore, our supreme court held that the husband expended time and effort during the marriage in an effort to create more marital assets, and these assets are divisible. Likewise, Michael contracted for the stock options during the marriage in an effort to add to the household income. Like McDermott, during the marriage, Michael expended time and effort working for Brady. The stock options Michael can "collect" as deferred compensation for the work he performed before the divorce are divisible, marital property.
*223 Michael asserts that the contracts setting forth the terms of the stock awards contain restrictive policies that "allow Brady Corporation to amend, modify, defer, claw back, or terminate Michael's possible, future rights," and Michael argues that these policies would allow Brady to unilaterally terminate the options. Michael cites no case law to support his argument that the above-named policies are anything more than boilerplate. In our review, we found no case law or statutory regulation declaring that any of these policies render stock-awards unenforceable. When stock options are nontransferable according to the stock option agreement, courts have found that the options may be considered marital property. In a similar case, Jensen v. Jensen , 824 So.2d 315, 320 (Fla. Dist. Ct. App. 2002), the Florida District Court of Appeals held that
[w]hile both expert witnesses in this case testified that appellant's unvested stock options were incapable of being valued or transferred as of yet, the stock options were granted to appellant during the marriage ... while the unvested stock options in this case are contingent upon certain events transpiring, such as appellant's continued employment, these options were granted to appellant during the marriage. Appellant's employer sought to reward appellant for his past commendable service, while at the same time, adding incentive for appellant to remain with the company in order to exercise such options. Yet, in the unfortunate circumstance of appellant's death, the option period would have remained open to appellant's estate for one year. Similarly, if appellant became disabled, such options would then vest. Notwithstanding the lack of value, such options that were gained
prior to the filing of the dissolution petition do represent assets that were accumulated during the marriage and are, thus, subject to equitable distribution.
The appellant in Jensen and Michael have very similar agreements regarding the stock options. Neither death nor disability bar the vesting of the stocks, and in both cases, the percentage of the stock options that the lower court found are divisible, marital property represent deferred payment for work performed during the marriage. The fact that certain restrictions, such as the inability of the employee to transfer the stock, inhibit the control of the stock-option holder does not render the stock award agreement unenforceable. Michael does not cite any authority regarding the effect of the named contingencies on the vesting and divisibility of stock awards, and we decline to accept his interpretation.
Michael also asserts that the circuit court's decision to distribute the stock options violates Arkansas Code Annotated section 9-12-315(a)(4) (Repl. 2015), which sets forth that
[w]hen stocks, bonds, or other securities issued by a corporation, association, or government entity make up part of the marital property, the court shall designate in its final order or judgment the specific property in securities to which each party is entitled, or after determining the fair market value of the securities, may order and adjudge that the securities be distributed to one party on condition that one-half (1/2) the fair market value of the securities in money or other property be set aside and distributed to the other party in lieu of division and distribution of the securities.
Michael correctly concedes that the stock options at issue do not directly comprise stocks, bonds, or other securities; however, he asserts that this court should treat the stock options as it would corporate stock that has been designated marital *224 property. Michael asserts that the circuit court erred when it "failed to either allocate the ownership of the martial property between Michael and Rene or determine the fair market value of the marital property and divide that value between Michael and Rene," and he cites Adametz v. Adametz , 85 Ark. App. 401, 155 S.W.3d 695 (2004), in support of his argument. In Adametz , the circuit court found that the hospital in which the Adametzes invested had concrete, ascertainable value-namely its real estate assets. The wife failed to present any evidence of the value of those assets, and the circuit court found that because of her failure to provide evidence of the fair market value of the real estate, she was not entitled to any amount of the assets. The instant case is distinguishable from Adametz because here, the stock award did not have an immediate, ascertainable value at the time of the divorce. Indeed, Rene's expert forensic accountant testified that she had not calculated the fair market value of the options because their value may be ascertained only at the time the option is exercised. Michael's assertion that Rene must present such evidence mischaracterizes the nature of the stock awards. Again, McDermott , supra , is instructive. In McDermott , the amount of the contingency fee that the husband contracted for during marriage was not known at the time of the divorce. Our supreme court held that because the husband expended time and effort working on these cases during the marriage, a percentage of the contingency fee is marital property, and the actual amount of the fee awarded depends on the future outcome of the case. In the instant case, the circuit court makes it clear that Rene's interest in the stock awards is a quantifiable, proportional percentage of the deferred payment for Michael's past performance for Brady during the marriage. The court's percentage-based division of the property is appropriate and necessary when the value of the property is not immediately ascertainable as it is here and in McDermott . For the reasons set forth above, we affirm.
Affirmed.
Gruber, C.J., and Harrison, J., agree.

In Kelly v. Kelly , 2015 Ark. App. 147, 2015 WL 1000809, we ruled that the divorce decree was not final for purposes of appeal. Owen Kelly filed a petition for review. In Kelly v. Kelly , 2016 Ark. 72, 483 S.W.3d 296, our supreme court vacated the opinion and remanded the case to this court.